**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERINA MORALES and ADRIANA GUIDRY, individually and on behalf of all others similarly situated, <br><br>                      Plaintiffs, <br><br>     v. <br><br> NEW YORK UNIVERSITY, <br><br>                      Defendant. | No. 1:20-cv-4418 <br><br> <u>JURY TRIAL DEMANDED</u> |

**<u>CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

<u>Page</u>

I.    NATURE OF ACTION ......................................................................................1

II.   JURISDICTION AND VENUE ........................................................................2

III.  PARTIES .........................................................................................................3

    A.    Plaintiff Morales ...................................................................................3

    B.    Plaintiff Guidry ....................................................................................4

    C.    Defendant New York University ...........................................................5

IV.   FACTS .............................................................................................................6

    A.    Background ............................................................................................6

    B.    The Novel Coronavirus Shutdowns And Defendant's Campus Closure ..............10

    C.    Defendant's Refusal To Issue Tuition And Other Fee Refunds ...........................18

V.    CLASS ACTION ALLEGATIONS .................................................................18

VI.   CAUSES OF ACTION ....................................................................................22

    COUNT I BREACH OF CONTRACT ....................................................................22

    COUNT II UNJUST ENRICHMENT ....................................................................23

    COUNT III CONVERSION ...................................................................................24

PRAYER FOR RELIEF ...........................................................................................25

JURY DEMAND ......................................................................................................25

Plaintiffs, SERINA MORALES ("Morales") and ADRIANA GUIDRY ("Guidry") (collectively referred to herein as "Plaintiffs"), individually and on behalf of all others similarly situated, for their Class Action Complaint against Defendant New York University ("NYU"), based upon personal knowledge as to their own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.       NATURE OF ACTION

1.       This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.       Despite sending students home and closing its campus(es), Defendant continues to charge for tuition and certain fees as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiffs and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiffs and the Class Members did not bargain for such an experience.

---

[1] Plaintiffs and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiffs will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

010920-31/1296654 V1

3.      While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law. And for some students and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4.      As a result, Defendant's actions have financially damaged Plaintiffs and the Class Members. Plaintiffs bring this action because Plaintiffs and the Class Members did not receive the full-value of the services paid, did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than New York, where this action is originally being filed, and that the

total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C.

§ 1332(d)(5)(B).[2]

6.      Venue is appropriate in this District because Defendant is located within the Southern District of New York. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, have occurred within this judicial district.

### III.      PARTIES

**A.      Plaintiff Morales**

7.      Plaintiff Serina Morales is a citizen and resident of the State of New York. Plaintiff was enrolled as a full-time student for the Spring 2020 academic term at Defendant. Plaintiff was in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term. Plaintiff paid Defendant for opportunities and services that she did not receive, including on-campus education, facilities, services, and activities.

8.      In matriculating at NYU, Plaintiff—like other students—chose to enroll for in-person classes to obtain a hands-on educational experience, avail herself of top academic instruction, and directly interact with faculty and classmates to increase her knowledge and understanding of the subject material.

9.      While NYU publicly maintains the position that tuition will not be refunded because classes continue remotely, the reality as reflected by Plaintiff Morales' experience is far

---

[2] Approximately 29.6% of NYU undergrads come from New York State.
https://www.collegefactual.com/colleges/new-york-university/student-life/diversity/chart-geographic-diversity.html.

different. Instead, the content and quality of her education decreased significantly. As a result, Plaintiff suffered a direct loss and did not receive her bargained for academic experience.

10.     While Plaintiff could previously meaningfully interact with her professors directly, whether before or after class, in office hours, or through casual conversations, such opportunities were limited to rote emails and pre-scheduled in-and-out Zoom conferences, absent of all relationship connections from earlier in the semester.

11.     Further, as a student enrolled in Defendant's English program, in-person access to peers and facilities were critically important to her education. However, with the shift to remote learning, Plaintiff Morales lost access to school spaces and opportunities that she otherwise would have been able to access. For example, Plaintiff Morales' interviewing strategies course, an important component of the work was developing in-person interviewing strategies. But with the shift to online only education, Plaintiff was limited to email interview. Likewise, for another class half of Plaintiff's coursework was cancelled. And another important course, which summarized her time at NYU in a creative project, was similarly and substantially watered down.

12.     Nevertheless, Defendant assessed Plaintiff Morales its full, normal tuition rate and has not provided her a refund.

**B.     Plaintiff Guidry**

13.     Plaintiff Adriana Guidry is a citizen and resident of the State of New York. Plaintiff was enrolled as a part-time student for the Spring 2020 academic term at Defendant. Plaintiff was in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term. Plaintiff paid Defendant for opportunities and services that she did not receive, including on-campus education, facilities, services, and activities.

14.     In matriculating at NYU, Plaintiff—like other students—chose to enroll for in-person classes to obtain a hands-on educational experience, avail herself of top academic instruction, and directly interact with faculty and classmates to increase her knowledge and understanding of the subject material.

15.     Following the closure of Defendant's campus and the shift to online-only education, Plaintiff suffered a direct loss and did not receive her bargained for academic experience.

16.     While Plaintiff could previously meaningfully interact with her professors directly, whether before or after class, in office hours, or through casual conversations, such opportunities were limited to rote emails and pre-scheduled in-and-out Zoom conferences, absent of all relationship connections from earlier in the semester.

17.     Further, as a student enrolled in Defendant's Drama program, in-person access to peers and facilities were critically important to her education. However, with the shift to remote learning, Plaintiff Guidry lost access to school spaces and opportunities which she would otherwise have accessed. Thus, she could not use school spaces for such regular activities as reading, meeting with other students, and talking about projects, nor could she participate in acting projects for classmates that were involved in directing projects or design costumes for a show that another classmate was producing.

18.     Nevertheless, Defendant assessed Plaintiff Guidry its full, normal tuition rate and has not provided her a refund.

**C.     Defendant New York University**

19.     Defendant New York University is an institution of higher learning primarily located at 70 Washington Square South, New York, New York. Defendant provides Class

-5-

Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiffs and the Class Members.

## IV.   FACTS

**A.   Background**

20.     Founded in 1831, NYU is the largest private university in the United States. NYU has a current enrollment of approximately 58,461 students, across 21 schools, colleges, institutes, and programs.

21.     As of August 31, 2019, NYU reported an endowment valued at over $4.3 billion, with total assets exceeding $23.1 billion. NYU's operating revenues that year included tuition and fee revenues of over $2.022 billion (net of financial aid awards), an increase of $111.6 million over the prior fiscal year.

22.     NYU reports $6 billion in fundraising and the "Campaign for NYU"—which concluded in 2008 and raised over $3 billion—was the largest fundraising campaign in U.S. higher education at the time, raising the equivalent of "more than $1 million per day, seven days per week, for the entire seven-year period of the campaign."[3]

23.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

---

[3] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president-emeritus/accomplishments/development--fundraising-and-finances.html.

010920-31/1296654 V1

24.     Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

25.     A few examples of such efforts to promote that experience follow.

26.     As Defendant notes: "The core of New York University is the academic enterprise. The best students and faculty are drawn to the University by the allure of being part of a compelling intellectual and creative enterprise—a community of scholars characterized by collaboration, innovation, and incandescent teaching. NYU students get the experience of attending a truly global university, anchored in New York City but with nodes throughout the world. Learning opportunities present themselves both in and out of the classroom, befitting an institution that is and always has been 'in and of the city.'"[4]

27.     NYU also promotes itself to students as "a community of communities" explaining that "[f]rom residence halls to clubs and organizations, these clubs will enrich your experience," "help you form lifelong connections with diverse classmates from across the United States and the world."[5]

28.     Defendant also describes the role of fellow students in answering the question "What makes NYU a unique place to learn?": "Whether studying, conducting research, sharpening your professional acumen, or building your network, you will be surrounded by scholars and peers who will enlighten and challenge you. No matter where you head on your journey after graduation, your fellow students could be your colleagues for life."[6]

---

[4] https://www.nyu.edu/academics.html.

[5] https://www.nyu.edu/admissions/undergraduate-admissions/life-at-nyu.html.

[6] https://www.nyu.edu/admissions/graduate-admissions.html.

29.     NYU also recognizes that delivering classwork is not the only aspect of a university, rather "[u]niversity life at NYU is supplemented with a variety of resources and services provided by the University."[7]

30.     And as explained in NYU's video "Meet NYU":

> Student: The campus experience at NYU is very unique.

> Josh: A lot of people think NYU doesn't really have a campus but it's a huge misconception NYU really does have a concentrated campus within the city.

> Meredith: It's where we go to school where we live where we hang out where we have our clubs it's where you find students and geographically that's right around Washington Square Park.

> Remy: Washington Square Park means a lot to me. When I first came to NYU after I moved into my dorm one of he first things I did was just start walking around and I walked right through Washington Square Park and I immediately felt like I was home.

> John: This is like our quad for the University and it's a great place to meet up with friends and classmates and most of our classroom buildings are located just right around the square.[8]

31.     NYU also underscores the importance of its world-class facilities to the student experience, including but not limited to the Bobst Library ("a central hub on campus for all students," with "the lower levels of the library are actually open 24 hours" where students "have so many other students sitting by you, studying, engaging, discussing with other people"), the Kimmel Center ("a center where every student has the chance to just come in and do something that isn't academic per se and its really just nine floors of socialization"), and the Skirball Center

---

[7] https://www.nyu.edu/life/campus-resources.html.

[8] https://youtu.be/GxqR6p8r6z0.

for Performing Arts ("the largest theatre space south of Times Square" and the home to "amazing productions").[9]

32.     And for those students with lab work, NYU explains that "experience in a lab is invaluable because you have access to so many resources . . . ."[10]

33.     To obtain such educational opportunities and activities, Plaintiffs and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

34.     For the Spring 2020 term, Defendant assessed tuition and fees based on the school or college within NYU, the program, and credit hours enrolled. As a few examples, Defendant (1) assessed full-time students in its College of Arts and Science $25,342 for the term along with $1,312 in registration and services fees, (2) assessed full-time students in its Tisch School of the Arts $27,964 in tuition and $1,312 in registration and services fees, and (3) assessed full-time students in its Stern School of Business $25,641 in tuition and $1,312 in registration and services fees. Room and board expenses for the term approximated $9,342.00.

35.     Such charges for study are significantly higher than online-only programs.

36.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges a flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

37.     Moreover, the American Council on Education, a membership organization of more than 1,700 colleges and universities (and of which Defendant is a member), confirms the

---

[9] *Id.*

[10] *Id.*

importance that students and families bargain for in selecting in-person experiences over online classes.[11] As noted in a May 28, 2020 letter to certain members of Congress: "Encouraging, enabling, and supporting the safe reopening of college and university campuses for in-person learning is **essential** to educating our nation's future workforce, preserving employment for millions, and helping restart America's economy."[12]

**B.     The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

38.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

39.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

40.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

41.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

42.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders

---

[11] https://www.acenet.edu/About/Pages/default.aspx.

[12] https://www.acenet.edu/Documents/Letter-Congress-pandemic-liability-052820.pdf (emphasis added).

and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District

of Columbia, and Puerto Rico are being urged or directed to stay home.

43.     On or about March 3, 2020, Defendant began implementing its domestic

coronavirus response. That day, NYU suspended all university-related travel outside the U.S.

44.     On March 10, 2020, Defendant announced its transition to remote instruction for

students at its New York campus, with all classes moving to remote instruction and meeting

remotely at their regularly scheduled time through at least March 27, 2020.[13]

45.     That same day, in a message to students, NYU's president highlighted the

differences in online versus in-person educational experiences:

> This was not the spring semester we envisioned for you; I am sure
> it is not the one you foresaw for yourself. The vibrancy of the
> classroom experience and the energy of campus life are important
> parts of the college experience. We continue to hope that
> conditions will allow us to resume in-person classes after March
> 27, though developments make that increasingly doubtful.
>
> Like other universities that have made similar decisions in recent
> days, NYU has never tried moving its entire curriculum to
> remotely-held classes. We are fortunate, after a fashion, to be able
> to avail ourselves of NYU Shanghai's experience, which has been
> positive. I''s not the same as being in class together, but our
> colleagues in Shanghai tell us that the heart of the educational
> process—the exchange of ideas and discourse between class
> members—still succeeds in this format.[14]

---

[13] https://www.nyu.edu/about/leadership-university-administration/office-of-the-
president/communications/important-new-coronavirus-related-measures-and-restrictions-and-
possible-future-steps.html.

[14] https://www.nyu.edu/about/leadership-university-administration/office-of-the-
president/communications/a-message-to-nyu-students-from-president-andrew-hamilton.html.

46.     By March 16, 2020, NYU announced that it was closing student residence halls and would be holding all classes remotely though the end of the semester.[15] In addition to closing student housing, NYU closed all of its libraries, sports facilities, athletic seasons, bookstore, and the Skirball Center for the Performing Arts, among other facilities.

47.     NYU's president described NYU's move to remote instruction as "the beginning of a mode of teaching untried by most of us, and tried at this scale by none of us."[16]

48.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiffs and the Class Members. As NYU's president stated: "[n]othing quite replaces being in class with one's students . . . ."[17]

49.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

50.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester. . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning. . . . It shouldn't

---

[15] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/update-on-covid-19.html.

[16] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/thank-you-to-nyu-faculty-from-the-president-and-the-provost.html.

[17] https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/communications/a-letter-to-parents-from-nyu-president-andrew-hamilton.html.

just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[18]

51.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[19]

52.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and

---

[18] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

[19] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[20]

53.     For example, in an opinion piece published in the Washington Square News, NYU's independent student newspaper, one student discussed NYU's attempt "to justify the university's failure to reimburse tuition and financially accommodate students despite its sizable endowment" where "NYU is not being transparent about its financial assets nor its ability to meet the needs of its student body."[21] In summarizing the student experience at NYU:

> In its mission statement, NYU prides itself for being "one of the most networked and extensive worldwide platforms for learning, teaching, researching, building knowledge, and inventing new ways to meet humanity's challenges." Being a leader in global education that provides students with material access to resources worldwide is an essential part of the university's reputation.
>
> Now, having transitioned to remote instruction entirely, students have lost access to these "networked and extensive worldwide platforms" that the university spends billions of dollars to guarantee. And while NYU flaunts "meet[ing] humanity's challenges," it fails, in a moment of extreme crisis, to meet the challenges of its own student body. After evicting students from its campuses, the university capped emergency aid at $500 and refused to issue tuition refunds for the spring semester. All of the benefits the university offers that justify its bloated tuition such as being located in New York City, having "a rich environment," study-abroad programs, access to large libraries and on-campus facilities, etc. have been lost.
>
> NYU claims that it "provides a rigorous, demanding education." It also claims that student success is "an ethos and an office." Yet the prospects of student success are dwindling, especially as students become increasingly disillusioned with remote instruction. On multiple levels, the university is not doing enough to academically support its students nor live up to its academic mission.[22]

---

[20] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

[21] https://nyunews.com/opinion/2020/05/07/nyu-endowment-coronavirus-tuition/.

[22] *Id.*

-14-

54.     As another student explained in a Change.org petition to NYU:

I hope all are well during this unprecedented time. Everyone is struggling in one way or another. As the virus continued to spread public gatherings were halted. That also meant class for students at NYU, as well as around the globe, were halted. Classes have moved online which creates for an atmosphere that is quite divergent in comparison to our previous semester. Students are stuck at home listening to their professors through a tiny screen instead of a large lecture hall bustling with classmates. While we all appreciate our professors as well as NYU for continuing our education through COVID-19, something just doesn't sit right with me. Full tuition with some partial refunds is all that some students have been offered, but that is not enough. Full tuition should not be given when students do not have access to the buildings essential for their academic development. Another essential that we all pay for is our face to face interactions with our teachers which cannot be duplicated through a screen. Online colleges vary in tuition cost, but on average many online colleges is around $30,000 at most. NYU is obviously more expensive than that, but now that we are faced with an online solution similar to these online colleges shouldn't our institution match a similar price point? $30,000 into around 120 credits is about $200 per class. Until NYU can provide the resources that students normally received pre COVID-19 they should not expect their student to pay for the "normal" tuition. I understand that NYU has to continue paying rent for their buildings and teachers who are still diligently teaching their students, but the reality is that NYU is an institution and a lot of institutions may receive government funds to bail them out. Students on the other hand, many of whom are not receiving ANY governmental handouts due to the exclusion of the stimulus package, will not be bailed out. We are not being taken care of, and in that same lack of care, we will not be taken advantage of either by institutions. If you feel the same, please sign this petition to further reduce the tuition payment for spring and summer classes to reflect exactly what we are getting. Not only to reflect what the students are getting, but what we are lacking, and that is shown through every NYU students household right now as we sit and wait for zoom university to start up.[23]

55.     Similarly, as students in NYU's School of Social Work detailed the issues with switching to remote instruction in a separate Change.org petition:

---

[23] https://www.change.org/p/nyu-nyu-reduction-in-tuition-covid-19.

While we understand the difficulty, uncertainty, and rapid changes during the COVID-19 crisis, we the NYU Silver School of Social Work community are committed to continuing our advocacy.

**Course Tuition Reimbursement**: The NYU Silver School of Social Work, as well as the other NYU schools, have been denied any course tuition reimbursement. The cost of tuition at NYU is already very high, and the ineffective quality education through Zoom makes it unfair for students to be paying the same price. We support and acknowledge the professors and their teaching, but this platform is not how we intended taking our courses. Online course prices should not be the same amount and the differences should be refunded. The school has failed to realize that we are not gaining the same quality educational experience as an in-class environment. NYU can afford partial tuition refunds! We cannot be expected to pay for services and resources, as well as the locations of our campuses, when we cannot even access them. NYU must leverage its $4.3 billion endowment and $9 billion in net assets to ensure that we are not pushed further into debt at the onset of an economic crisis.

**Less Effective Courses Online**: Some courses are not meant to be suitable online because of the need for human interactions, interactive supplies, classroom settings, resources, etc. Some examples such the groups courses, creative art therapy course, field courses, and more have been more impacted greatly by being online because these courses were meant to be most effective in a classroom setting. We acknowledge that the professors are doing their best and we thank them for everything they are doing. We are are advocating about the elements of the course that we are missing out because they are now online. For example this can include supplies, resources, use of art studio, the making of art projects, etc. Another example, the groups course, is very interactive with role-playing and observations and those experiences cannot be done online. We are NOT singling out these courses but using them as EXAMPLES. We want to clarify that these issues are NOT because of the professors, but because of the elements that can only be done in the classroom setting. The professors are doing an amazing job with what they have and we cannot thank them enough!

**Field Placement Hours**: Furthermore, for many individuals our field placements had weeks left to complete but our abilities to participate became non-existent for many. While some individuals could complete remote access, others could not. We paid for the hours of our field experiences, and once those were terminated we

should have gained the money back for the remainder hours. A remote assignment had been given however we feel this assignment was not beneficial to our clinical experiences and our hours could have been offered with at least better clinical trainings online. NYU determined that since students are still getting full credit for the field course and still exceeding hours expected by CSWE and NY State Board of Education for the MSW, that this equates to students still getting what they paid for. We did not pay for hours, we paid for experience that we did not get!

**Unexpected Termination**: It is also important to address that the ending of our field placements was given with almost no notice. For many individuals, they got an email stating they could not return the next day to their placements. This created us to complete rapid terminations or for some no terminations not only with our clients but also our agencies. While this decision was made out of safety, we believe less than a day's notice was not sufficient and more time could have yielded to less panic and devastations. Many students experienced emotional distress from the abrupt departure that has impacted them mentally, emotionally, and academically. Unfortunately, the abrupt decision caused negative consequences of the students, clients, and agencies.

**Inability to Access Buildings/Resources**: inability to access on-campus resources such as computer labs, libraries, fitness centers, and more. These activities should also be partially refunded for students. We cannot be expected to pay for services and resources, as well as the locations of our campuses, when we cannot even access them.

**Networking/Events**: The Silver School of Social Work has been incredible trying to create Zoom networking events etc. but we all know this is very different from the face to face opportunities of job fairs, cocktail hours etc. and the power of meeting someone in person and making a real connection. We are missing out on the many events that the school holds in person. In addition to this, many students were looking forward to attending the Silver Ball and now that is another event that has been taken away from us. We are thankful for the address of graduation concerns and we hope that we can still look forward to a graduation celebration in-person in the future.[24]

---

[24] https://www.change.org/p/partial-refunds-for-nyu-silver-school-of-social-work-students.

**C.      Defendant's Refusal To Issue Tuition And Other Fee Refunds**

56.      Given Defendant's transition to online classes and COVID-19 concerns,

Defendant asked students to vacate student housing.

57.      NYU has distributed pro-rated refunds to students required to vacate its residence

halls and suspend their meal plans and provided select other school and course based fee refunds.
[25]

58.      Defendant, however, is refusing to give prorated tuition refunds for Rather, "[a]s

classes continue to be conducted remotely, tuition will not be refunded."[26]

59.      For the same reason, Defendant similarly refuses to provide registration and

services fee refunds.[27]

## V.      CLASS ACTION ALLEGATIONS

60.      Plaintiffs sue under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of

Civil Procedure, on behalf of themselves and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who
> paid Defendant, in whole or in part, tuition, fees, and/or room and
> board for in-person instruction and use of campus facilities, but
> were denied use of and/or access to in-person instruction and/or
> campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest,

and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further

excluded from the Class is this Court and its employees. Plaintiffs reserve the right to modify or

---

[25] https://www.nyu.edu/life/safety-health-wellness/coronavirus-information/information-for-students/school-and-course-based-fee-refund-determinations.html.

[26] https://www.nyu.edu/life/safety-health-wellness/coronavirus-information/information-for-students.html.

[27] *Id.*

amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

61.     The definition of the Class is unambiguous. Plaintiffs are members of the Class Plaintiffs seek to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

62.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class Members is unknown to Plaintiffs but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

63.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

64.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

65.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

      a.     Whether Defendant engaged in the conduct alleged;

      b.     Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiffs and the Class Members;

      c.     Whether Defendant breached identical contracts with Plaintiffs and the Class Members;

      d.     Whether Defendant violated the common law of unjust enrichment;

      e.     Whether Defendant converted Plaintiffs and the Class Members refunds and/or rights to refunds; and

      f.     The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

66.     The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

67.     Plaintiffs' claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiffs are students enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiffs were instructed to leave Defendant's campus, forced to take online classes, and have been completely or partially denied a refund for tuition, fees, and/or room and board.

68.     Plaintiffs and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiffs are familiar with the basic facts that form the bases of the Class Members' claims. Plaintiffs' interests do not conflict with the interests of the other Class Members they seek to represent. Plaintiffs have retained counsel competent and

experienced in class action litigation and intends to prosecute this action vigorously. Plaintiffs'
counsel have successfully prosecuted complex class actions, including consumer protection class
actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the
Class Members.

69.     The class action device is superior to other available means for the fair and
efficient adjudication of the claims of Plaintiffs and the Class Members under Rule 23(b)(3). The
relief sought per individual members of the Class is small given the burden and expense of
individual prosecution of the potentially extensive litigation necessitated by the conduct of
Defendant. It would be virtually impossible for the Class Members to seek redress individually.
Even if the Class Members themselves could afford such individual litigation, the court system
could not.

70.     In addition under Rule 23(b)(3)(A), individual litigation of the legal and factual
issues raised by the conduct of Defendant would increase delay and expense to all parties and to
the court system. The class action device presents far fewer management difficulties and
provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive
supervision by a single court.

71.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims
of Plaintiffs and the Class Members in this forum given that Defendant is located within this
judicial district and discovery of relevant evidence will occur within this district.

72.     Given the similar nature of the Class Members' claims and the absence of
material differences in the state statutes and common laws upon which the Class Members'
claims are based, a nationwide Class will be easily managed by the Court and the parties per
Rule 23(b)(3)(D).

## VI.    CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

73.    Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

74.    Plaintiffs and the Class Members entered into identical, binding contracts with Defendant.

75.    Under their contracts with Defendant, Plaintiffs and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

76.    Plaintiffs and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

77.    However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiffs and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiffs and the Class Members' ability to access university facilities, and/or has evicted Plaintiffs and the Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiffs and the Class Members from the benefit of their bargains with Defendant.

78.    Plaintiffs and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

79.    Plaintiffs and members of the Class are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

-22-

## COUNT II

## UNJUST ENRICHMENT

80.     Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

81.     At all times relevant hereto, Plaintiffs and the Class Members directly conferred non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiffs and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

82.     Defendant knowingly accepted the benefits conferred upon it by Plaintiffs and the Class Members.

83.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiffs and members of the Class.

84.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, because of Defendant's unjust and inequitable actions, Plaintiffs and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

85.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

86.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Plaintiffs and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

-23-

## COUNT III

## CONVERSION

87.     Plaintiffs restate and re-allege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein.

88.     Plaintiffs and the other members of the Class have an undisputed right to receive educational services, activities, and access to Defendant's facilities for the Spring 2020 term. Plaintiffs and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

89.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiffs and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiffs and the Class Members paid Defendant as well as barred Plaintiffs from Defendant's facilities.

90.     Defendant deprived Plaintiffs and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

91.     Plaintiffs and/or Class Members have requested and/or demanded that Defendant issue refunds.

92.     Defendant's interference with the rights and services for which Plaintiffs and members of the Class paid damaged Plaintiffs and the members of the Class, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiffs and members of the Class of their rights, benefits, services, and/or facility access.

-24-

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members request that the Court enter an order or judgment against Defendant including:

A.      Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B.      Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.      Actual damages and all such other relief as provided under the law;

D.      Pre-judgment and post-judgment interest on such monetary relief;

E.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiffs and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiffs demand trial by jury on their own behalf and on behalf of Class Members.

Dated: June 9, 2020                      Respectfully submitted,

                                         By:   _/s/ Nathan A. Tarnor_____
                                         Nathaniel A. Tarnor (Bar No. 4742797)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         555 Fifth Avenue, Suite 1700
                                         New York, NY 10017
                                         (212) 752-5455
                                         nathant@hbsslaw.com
                                         Steve W. Berman (*Pro Hac Vice* Forthcoming)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1301 Second Avenue, Suite 2000
                                         Seattle, WA 98101
                                         (206) 623-7292
                                         steve@hbsslaw.com

-25-

Daniel J. Kurowski (*Pro Hac Vice* Forthcoming)
Whitney K. Siehl (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Attorneys for Plaintiffs, individually and on behalf
of all others similarly situated*