**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

SERINA MORALES and ADRIANA
GUIDRY, on behalf of themselves and all
others similarly situated,

               Plaintiffs,

        v.

NEW YORK UNIVERSITY,

               Defendant.

---

Case No. 1:20-cv-04418-GBD

---

**DEFENDANT NEW YORK UNIVERSITY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT**

**DLA PIPER LLP (US)**

Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

    A.    NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees. ...................................... 3

    B.    The Covid-19 Pandemic Forces NYU's Transition to Remote Learning. .............. 4

    C.    NYU Provides Certain Refunds to Students. ............................................... 4

    D.    The Plaintiffs. ........................................................................................... 5

ARGUMENT ................................................................................................................. 6

I.    Standard of Review ................................................................................................ 6

II.    The Plaintiffs' Claims Should Be Dismissed Because The Court Should Not Intervene in Educational Decisions. ........................................................................ 7

III.    The Plaintiffs Do Not Have Article III Standing To Assert Certain Claims. .................. 10

    A.    The Plaintiffs Lack Standing to Assert Claims Relating to Colleges, Schools, and Programs In Which They Were Not Enrolled. ............................... 10

    B.    The Plaintiffs Lack Standing to Seek Injunctive Relief. ....................................... 12

IV.    The Plaintiffs' Breach of Contract Claim Must Be Dismissed. ......................................... 12

    A.    The Plaintiffs Have Not Identified a Specific Promise That Was Broken. .......... 12

    B.    NYU Did Not Breach Any Contract. ................................................................ 16

    C.    Covid-19 Rendered Performance of the Alleged Contract Impossible. .............. 18

    D.    The Plaintiffs Failed Adequately to Allege Damages. ....................................... 20

V.    The Plaintiffs' Unjust Enrichment Claim Must Be Dismissed. ....................................... 21

    A.    The Unjust Enrichment Claim Must Be Dismissed As Duplicative. ..................... 21

    B.    NYU Was Not Unjustly Enriched. ................................................................... 22

VI.    The Plaintiffs' Conversion Claim Must Be Dismissed. ................................................. 23

    A.    The Conversion Claim Must be Dismissed As Duplicative. ............................... 23

    B.    The Plaintiffs Fail to State a Claim for Conversion. .......................................... 24

        1.    The Right To In-Person Classes Is Intangible Property Not Subject to a Conversion Claim. ............................................................................ 24

        2.    The Plaintiffs Had No Ownership Interest in In-Person Classes. .............. 25

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andre v. Pace Univ.*,
   655 N.Y.S.2d 777 (2d Dep't 1996) ..................................................................7

*Anthes v. New York Univ.*,
   2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v.*
   *Nelson*, 763 F. App'x 57 (2d Cir. 2019) ..................................................13, 14, 15

*Architectural Body Research Found. v. Reversible Destiny Found.*,
   335 F. Supp. 3d 621 (S.D.N.Y. 2018) ...............................................................3

*Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*,
   2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009) .............................................23, 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................6

*Babiker v. Ross Univ. School of Med.*,
   2000 WL 666342 (S.D.N.Y. May 19, 2000), *aff'd* 86 F. App'x 457 (2d Cir.
   2004) ........................................................................................................18

*Barsoumian v. Williams*,
   29 F. Supp. 3d 303 (W.D.N.Y. 2014) ...............................................................8

*Bautista v. CytoSport, Inc.*,
   223 F. Supp. 3d 182 (S.D.N.Y. 2016) ...............................................................21

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
   2018 WL 4778906 (E.D.N.Y. October 1, 2018) ..................................................3

*Berman v. Sugo LLC*,
   580 F. Supp. 2d 191 (S.D.N.Y. 2008) ...............................................................25

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005) ............................................................................3

*Bytemark, Inc. v. Xerox Corp.*,
   342 F. Supp. 3d 496 (S.D.N.Y. 2018) ...............................................................21

*Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*,
   2016 WL 5416498 (S.D.N.Y. Sept. 28, 2016) ....................................................16

*Cheves v. Trustees of Columbia University*,
   89 A.D.3d 463 (1st Dep't 2011) ......................................................................14

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
    123 F. Supp. 2d 133 (S.D.N.Y. 2000)...........................................................................23, 25

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)....................................................................................................................12

*DiMuro v. Clinique Labs. LLC*,
    572 F. App'x 27 (2d Cir. 2014) ..............................................................................................10

*Doe v. Columbia Univ.*,
    2020 WL 1528545 (S.D.N.Y. Mar. 31, 2020) ................................................................13, 17

*Doyle v. MasterCard Int'l Inc.*,
    2016 WL 9649874 (S.D.N.Y. Dec. 15, 2016) ........................................................................20

*Freedberg v. J.P. Morgan Chase & Co.*,
    2016 WL 7495181 (S.D.N.Y. Dec. 22, 2016) ..........................................................................5

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998)................................................................................8, 13

*Gertler v. Goodgold*,
    107 A.D.2d 481 (1st Dep't 1985), *aff'd* 66 N.Y.2d 946 (1985) ............................................7

*Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*,
    288 F. Supp. 2d 473 (S.D.N.Y. 2003)...................................................................................25

*Goel v. Ramachandran*,
    111 A.D.3d 783 (2d Dep't 2013) ............................................................................................22

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ......................................................................................22

*Harris v. New York State Dep't of Health*,
    202 F. Supp. 2d 143 (S.D.N.Y. 2002).....................................................................................5

*Kamen v. Am. Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986)...................................................................................................3

*Keefe v. New York Law Sch.*,
    71 A.D.3d 569 (1st Dep't 2010) ............................................................................................13

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009).............................................................................24, 25

*Kolodin v. Valenti*,
    115 A.D.3d 197 (1st Dep't 2014) ..........................................................................................19

*L. N. Jackson & Co. v. Royal Norwegian Gov't*,
177 F.2d 694 (2d Cir. 1949)..................................................................19

*Maas v. Cornell Univ.*,
94 N.Y.2d 87 (1999) ...............................................................................7

*Mahoney v. Endo Health Solutions, Inc.*,
2016 WL 3951185 (S.D.N.Y. Jul. 20, 2016) .........................................21

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)................................................................3, 6

*Matzan v. Eastman Kodak Co.*,
134 A.D.2d 863 (4th Dep't 1987)..........................................................25

*Metal Cladding, Inc. v. Brassey*,
159 A.D.2d 958 (4th Dep't 1990)..........................................................23

*Mihalakis v. Cabrini Med. Ctr.*
151 A.D.2d 345 (1st Dep't 1989) ..........................................................20

*Morrison v. Nat'l Austl. Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008)................................................................6, 7

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
225 F. Supp. 3d 201 (S.D.N.Y. 2016)....................................................22

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)..................................................................12

*Matter of Olsson v. Bd. of Higher Educ. of City of N.Y.*,
49 N.Y.2d 408 (Ct. App. 1980) .......................................................17, 18

*Organizacion JD LTDA v. U.S. Dep't of Justice*,
18 F.3d 91 (2d Cir. 1994)......................................................................19

*OTG Brands, LLC v. Walgreen Co.*,
2015 WL 1499559 (S.D.N.Y. Mar. 31, 2015) ..................................24, 25

*Paladino v. Adelphi Univ.*,
454 N.Y.S.2d 868 (2d Dep't 1982).........................................................7

*Patterson v. Morgan Stanley*,
2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ..........................................10

*Paynter v. New York University*,
319 N.Y.S.2d 893 (1st Dep't 1971) .....................................................8, 9

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
  2005 WL 1214281 (S.D.N.Y. May 20, 2005) .......................................................................7

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v.*
  *Bank of N.Y. Mellon*,
  775 F.3d 154 (2d Cir. 2014)...................................................................................10, 11

*Rodriguez v. New York Univ.*,
  2007 WL 117775 (S.D.N.Y. Jan. 16, 2007) .....................................................................18

*Roe v. Loyola Univ. New Orleans*,
  2007 WL 4219174 (E.D. La. Nov. 26, 2007) ..............................................................17, 23

*Samad v. Goldberg*,
  2016 WL 6678923 (S.D.N.Y. Nov. 14. 2016).....................................................................22

*Schachter v. U.S. Life Ins. Co. in City of New York*,
  77 F. App'x 41 (2d Cir. 2003) ........................................................................................7

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)....................................................................................................12

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*,
  196 F. Supp. 2d 378 (S.D.N.Y. 2002).............................................................................23

*Ward v. New York Univ.*,
  2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)................................................... *passim*

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015)................................................................................3

*WestLB AG v. BAC Fla. Bank*,
  912 F. Supp. 2d 86 (S.D.N.Y. 2012)...............................................................................21

*Yalincak v. New York Univ.*,
  2009 WL 10714654 (D. Conn. Sept. 3, 2009) .................................................................21

*Zirvi v. Flatley*,
  433 F. Supp. 3d 448 (S.D.N.Y. 2020).............................................................................25

## Other Authorities

Fed. R. Civ. P. 12(b)(1)..........................................................................................................6

Fed. R. Civ. P. 12(b)(6)..........................................................................................................6

Fed. R. Evid. 201 ..............................................................................................................3, 16

## PRELIMINARY STATEMENT

The novel coronavirus disease 2019 ("Covid-19") unleashed unprecedented and unanticipated threats to global public health and safety. Public health officials and New York State issued directives designed to protect the public – including the students, faculty and staff at universities including defendant New York University ("NYU") – from the growing danger from Covid-19. These directives and the threats attendant to large groups congregating on a college campus forced NYU to make the difficult but well-considered decision to transition completely from in-person to remote teaching for the remainder of the Spring 2020 semester following NYU's spring break. Notwithstanding the significant logistical effort and expense involved, NYU and its faculty remained committed to delivering a world-class educational experience for its students by implementing creative ways to continue to conduct nearly all classes by remote instruction.

NYU followed through on its commitment. Professors continued to teach; students continued to learn. *See, e.g.*, Ex. 1.[1] Professors rapidly adapted; NYU held remote classes all across its 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study. *See* Exs. 2–5. Every day, teachers worked to deliver NYU's intellectually stimulating and creative learning environment in new and different ways, and students continued to benefit from those efforts. Ex. 1. And, at the end of the semester, thousands of NYU students, including the plaintiffs here, received education credits and earned their degrees. *See* Ex. 6.

Nevertheless, plaintiffs Serina Morales and Adriana Guidry (the "plaintiffs") brought a putative class action against NYU that: asks this Court effectively to second guess the judgment of NYU's educators and administrators in making and implementing the decision to transition to

---

[1] "Ex." refer to the exhibits attached to the Declaration of Keara M. Gordon, dated August 4, 2020.

remote learning; argues that, in the plaintiffs' opinion, the remote learning environment to which NYU's faculty was forced to transition, and the manner in each of their teachers then delivered that instruction over a myriad of courses, was ineffective (apparently in total); and demands the return of the plaintiffs' tuition in full.[2]  Despite the fact that Covid-19 – not NYU – caused the need to transition to remote learning, the plaintiffs continued to receive remote instruction and earn academic credits, and in fact graduated with an NYU degree at the conclusion of the semester, the plaintiffs assert three claims, including: (1) breach of contract; (2) unjust enrichment; and (3) conversion.

Each fails, and the Complaint warrants dismissal for numerous reasons, including:

- At their core, each of the plaintiffs' claims impermissibly asks this Court to second guess NYU's educational decisions including the manner and effectiveness of the provision of educational services, which longstanding New York precedent precludes; indeed, what the plaintiffs seek would require the Court to review and assess *each* plaintiff's (and potentially the entire putative classes') course materials, syllabi, assignments, the method of teaching provided both before and after the transition to remote learning, any subsequent lessening of effectiveness (however measured), the student's input and work product, the student's subjective learning preferences, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or promised standard (whatever that may be) (*see* Section II);

- The plaintiffs lack Article III standing to assert these claims on behalf of absent class members who attended colleges, schools, or programs within NYU that the plaintiffs did not attend.  Each school, college, and program is different – the experience will differ for example, between graduate students versus undergraduates, law students versus medical students, versus engineering students, versus MBAs, versus actors, versus dancers, versus education majors, versus biology majors, for example (*see* Section III);

- The plaintiffs lack Article III standing to seek injunctive relief, as they do not allege that they will be taking NYU classes in the future (*see* Section III);

- The breach of contract claim must be dismissed because (1) the plaintiffs do not allege a specific promise that was broken; (2) NYU did not breach any contract or act in bad faith;

---

[2]     Three other sets of plaintiffs also filed similar actions against NYU.  *See Rynasko v. New York University*, No. 1:20-cv-3250-GBD (S.D.N.Y., filed Apr. 24, 2020), *Zagoria v. New York University*, No. 1:20-cv-3610-GBD (S.D.N.Y., filed May 8, 2020), *Romankow v. New York University*, No. 1:20-cv-04616-GBD (S.D.N.Y., filed Jun. 16, 2020).

(3) even if NYU had breached a contract, Covid-19 rendered its performance impossible; and (4) the plaintiffs failed adequately to allege damages (*see* Section IV);

- The unjust enrichment claim must be dismissed because: (1) it is duplicative of the other causes of action; and (2) the plaintiffs have not pled that NYU was unjustly enriched (*see* Section V); and

- The conversion claim must be dismissed because: (1) it is duplicative of the breach of contract claim; (2) the right to in-person classes is intangible property not subject to a conversion claim; and (3) the plaintiffs did not have an ownership interest in in-person instruction (*see* Section VI).

Respectfully, the Court should dismiss the Complaint in its entirety with prejudice.

## STATEMENT OF FACTS[3]

### A.   NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees.

NYU is an educational institution that, during the 2019-2020 school year alone, delivered higher education to over 50,000 enrolled undergraduate and graduate students.  Compl. ¶¶ 19–20. NYU's academic offerings include certificate programs, accelerated programs, study abroad, exchange programs, part-time studies, full-time studies, and associate, bachelor's, post-bachelor's, master's, post-master's, or doctoral programs.  Exs. 2–5.

---

[3]     For purposes of this motion, NYU accepts the plaintiffs' allegations as true except to the extent that they were contradicted by documentary evidence.  NYU reserves the right to dispute the accuracy of any factual allegation if the case proceeds past this motion (which it should not). But, the Court is not required to accept as true allegations that are contradicted by documents. When a "complaint relied on the terms of [an] agreement," the Court "may look to the agreement itself."  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).  The Court may consider official government documents, publicly available documents, and published websites. *See, e.g.*, *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166–67 (S.D.N.Y. 2015) (judicial notice of "official government websites [and] governmental records") (applying Fed. R. Evid. 201); *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *3 (E.D.N.Y. October 1, 2018) (judicial notice of "documents on published websites").  The Court can consider materials beyond the pleadings to resolve jurisdictional questions (*Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)), and on a factual challenge to jurisdiction, "evidentiary matter may be presented by affidavit or otherwise." *Architectural Body Research Found. v. Reversible Destiny Found.*, 335 F. Supp. 3d 621,633 (S.D.N.Y. 2018) (quoting *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

These wide-ranging academic offerings are delivered across and through NYU's 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study.  Exs. 2–5.  Many of NYU's 18 different schools and colleges have their own admissions process (*see*, *e.g.*, Exs. 7–11) and used different admissions-related materials for prospective students, on different websites, which highlight the different options and the distinct aspects unique to them, which have changed over time (*see*, *e.g.*, Exs. 12–14).

NYU assesses each student's tuition and fees based on the student's particular circumstances, including the school within NYU, the program within that school, and the particular courses.  *See* Compl. at ¶ 34 ("[NYU] assess[es] tuition and fees based on the school or college within NYU, the program, and credit hours enrolled").

### B.      The Covid-19 Pandemic Forces NYU's Transition to Remote Learning.

On March 7, 2020, Governor Andrew Cuomo declared a State of Emergency across New York due to a rapid increase in confirmed cases of Covid-19.  Ex. 15.  Five days later, Governor Cuomo issued an Executive Order expanding upon his prior order; he closed all schools in the state, prohibited all large gatherings, and shuttered bars and restaurants.  Exs. 16, 17.  That same day, on March 16, 2020, consistent with the government orders and to protect the health and safety of its students and employees, NYU announced the difficult, but essential, decision to move all classes to remote learning for the duration of the semester, following its previous announcements of a temporary transition to remote learning.  Exs. 18–20.  On March 20, 2020, Governor Cuomo announced he would be signing the "New York State on PAUSE" Executive Order, which "ban[ned] all non-essential gatherings of individuals of any size for any reason."  Ex. 21.

### C.      NYU Provides Certain Refunds to Students.

After suspending in-person instruction and closing virtually all of its residence halls, NYU refunded a *pro rata* amount for the costs of housing and dining services after the campus' closure.

4

Ex. 20.  NYU's various schools also refunded certain activity fees, following evaluation of "dozens of individual school and course-based fees for the purpose of determining potential refunds, which are based on whether or not students received all or part of the services, supplies, or equipment associated with the fee."  Ex. 22; *see* Ex. 23.

Consistent with its policy that undergraduate and graduate students who remained enrolled in courses after February 24, 2020 are not eligible for a tuition refund (*see* Exs. 24–26), and consistent with the fact that students continued to receive the benefit of their courses through remote instruction, NYU has not refunded tuition.  *See* Ex. 27.

### D.    The Plaintiffs

The plaintiffs are Serina Morales, a former English major in NYU's College of the Arts and Sciences ("CAS") and Adriana Guidry, a former Drama major in the Tisch School of the Arts ("Tisch").  Compl. ¶¶ 11, 17.  Ms. Morales was accepted to NYU in 2018, and Ms. Guidry was accepted on April 1, 2016.  *See* Exs. 28, 29.  Both earned sufficient academic credits to graduate with NYU degrees at the end of the Spring 2020 semester.  *See* Joint Response by Plaintiffs Rynasko, Morales, and Guidry to Plaintiff Zagoria's Motion for Consolidation and Appointment of His Counsel as Interim Class Counsel, *Zagoria v. NYU*, 1:20-cv-03610-GBD, ECF No. 13, at 6 (plaintiffs are "former NYU students" and each plaintiff is "an NYU graduate").[4]

The plaintiffs admit that "the reasons for" NYU's transition to remote learning "are justified," but they allege that they believe remote instruction was subpar to in-person instruction (Compl. ¶¶ 2, 45, 48, 54, 55), which they claim entitles them to a refund of tuition and unspecified

---

[4]    "On a motion to dismiss, the Court may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in . . . judicial proceedings'".  *Freedberg v. J.P. Morgan Chase & Co.*, 2016 WL 7495181, at *1 n. 1 (S.D.N.Y. Dec. 22, 2016) (quoting *Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002)).

fees.  *Id.* ¶ 60.  But, they admit that NYU has already "distributed pro-rated refunds to students,"
including refunds for "residence halls," "meals," and "other school and course based fee[s]."  *Id.*
¶ 57.  The plaintiffs claim that NYU breached an alleged contract with them, but they do not
articulate or attach the purported "contract," instead referencing undated brochures on the NYU
website promoting NYU's "community of communities," fellow students who will be "colleagues
for life," as well as various unspecified "resources and services provided by the University" and
facilities such as the Bobst Library, Kimmel Center, and Skirball Center.  *See* Compl. ¶¶ 26–31.

The plaintiffs seek to represent a putative class of "all persons enrolled at [NYU] for the
Spring 2020 term who paid Defendant . . . tuition, fees, and/or room and board for in-person
instruction and use of campus facilities, but were denied use of and/or access to in-person
instruction and/or campus facilities by Defendant."  *See* Compl. ¶ 60.

**ARGUMENT**

## I.   <u>Standard of Review</u>

In deciding Rule 12(b)(6) motions to dismiss, courts apply a "plausibility standard," which
is guided by "[t]wo working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First,
although the Court must accept all of a complaint's well-pled allegations as true, this "tenet" is
"inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."  *Id.*  Second, only complaints that state
a "plausible claim for relief" may survive a motion to dismiss.  *Id.* at 679.

"A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1)
when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova,* 201
F.3d at 113; *see also Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (same).
Courts lack subject matter jurisdiction when the plaintiff does not have Article III standing.

*Schachter v. U.S. Life Ins. Co. in City of New York,* 77 F. App'x 41, 42 (2d Cir. 2003).  The plaintiff bears the burden of establishing standing. *Morrison,* 547 F.3d at 170.

## II.  The Plaintiffs' Claims Should Be Dismissed Because The Court Should Not Intervene in Educational Decisions.

As a threshold matter, the plaintiffs' claims should be dismissed because they are premised on allegations that improperly ask the Court to evaluate whether NYU made the right decision to transition to remote learning, and then, once made, to examine whether individual faculty members failed to provide an effective education in particular courses during the period of remote instruction.   "[C]ourts retain a 'restricted role' in dealing with and reviewing controversies involving colleges and universities."  *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005) (finding that student failed to state a breach of contract claim) (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999) (affirming dismissal of breach of contract claim and noting that administrators are "better suited" to make decisions)).

It is well-settled that New York does not recognize claims that require the Court to second guess the decisions of educators or are akin to claims "that the school breached its agreement by failing to provide an effective education," particularly where such claims would require a court to "evaluate the course of instruction" or "review the soundness of the method of teaching that has been adopted by an educational institution."  *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 897 (2d Dep't 1996) (quotations omitted) (reversing trial court judgment for student).  "Such injury would constitute a clear 'judicial displacement of complex educational determinations' that is best left to the educational community."  *Id.* (quoting *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868 (2d Dep't 1982)).  "This public policy is grounded in the view that in matters wholly internal these institutions are peculiarly capable of making the decisions which are appropriate and necessary to their continued existence."  *Gertler v. Goodgold*, 107 A.D.2d 481, 485 (1st Dep't 1985), *aff'd* 66

N.Y.2d 946 (1985); *see also*, *e.g.*, *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 322 (W.D.N.Y. 2014) (dismissing breach of contract claim premised on an allegation that school "failed to provide [plaintiff] 'with an education environment conducive to learning'"; it was not "a sustainable breach of contract claim [but instead] an impermissible one for educational malpractice.").

Indeed, "[n]ot every dispute between a student and a university is amenable to a breach of contract claim . . . Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206–207 (S.D.N.Y. 1998) (dismissing breach of contract claims on a motion to dismiss). "[E]ven while applying contract principles, the courts have been careful to disallow claims that would involve the judiciary in reviewing the day-to-day judgments of educators." *Id.* at 209.

This longstanding line of authority is directly applicable here. In *Paynter v. New York University*, for example, the plaintiff sued for a tuition refund after NYU suspended classes on May 7, 1970 as a result of anti-war demonstrations reacting to the deployment of American troops to Cambodia and the events at Kent State. 319 N.Y.S.2d 893, 893 (1st Dep't 1971). The First Department reversed the trial court's decision that a refund was warranted and held that the trial court "erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year prior to the examination period." *Id.* at 894. In so doing, the Court recognized the general principle that "[p]rivate colleges and universities are governed on the principle of self-regulation, free to a large degree, from judicial restraints, and they have inherent authority to maintain order on their campuses." *Id.* The Court expressly observed that, "while in a strict sense, a student contracts

with a college or university for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom." *Id.*

Precisely the same result follows here, for the same reasons. The plaintiffs challenge NYU's decision to move all courses to remote instruction and allege that, in their opinion, the resulting education that each faculty member provided in each class was not as effective as it would have otherwise been. *See* Compl. ¶ 1. Specifically, the plaintiffs' complaint is predicated on the assertion that the education provided was not "a comprehensive academic experience" but "a limited online experience" (*id.* ¶ 2) because there are "differences in online versus in-person educational experiences" (*id.* ¶ 45), the "atmosphere . . . is quite divergent in comparison to our previous semester" (*id.* ¶ 54), and the education is "less effective" (*id.* ¶ 55), which they allege entitles them to a refund of tuition and fees. *Id.* ¶ 60. As a result, to examine and evaluate the actual quality of the education provided, the Court would be required to review and assess the plaintiffs' (and potentially every NYU student's) course materials, syllabi, objectives, assignments, the method of teaching provided both before and after the transition to remote learning, its effectiveness (however measured), the student's input and work product, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior standard. Such an analysis would be further complicated by the fact that this calculus may be different depending upon whether the course at issue is statistics versus Shakespeare, versus law, versus medicine, versus finance, versus education, versus engineering, versus chemistry. And, the Court would need to factor in the subjective desires and preferences of students, which are not uniform and many of whom learn differently. Well-established precedent mandates finding that the Court should not wade into such day-to-day judgments of educators –

precisely what courts in New York expressly and uniformly have declined to do for decades. Accordingly, the plaintiffs' claims are impermissible and must be dismissed.

## III.      **The Plaintiffs Do Not Have Article III Standing To Assert Certain Claims.**

### A.      **The Plaintiffs Lack Standing to Assert Claims Relating to Colleges, Schools, and Programs In Which They Were Not Enrolled.**

The plaintiffs do not have standing to assert claims related to the various schools, colleges, and programs they did not attend.  Courts hold that a named plaintiff lacks standing to assert claims on behalf of putative class members where the putative class members' claims would not raise "a set of concerns nearly identical" to those raised by the named plaintiff.  *DiMuro v. Clinique Labs. LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (summary order) (quotation omitted) (dismissing claims for lack of standing in consumer class action where named plaintiffs bought only four of seven products at issue because "each of the seven different products have different ingredients, and [defendant] made different advertising claims for each product" thus "[e]ntirely unique evidence" would be required to assess claims pertaining to each product); *see also, e.g.*, *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon,* 775 F.3d 154, 162 (2d Cir. 2014) (affirming dismissal for lack of standing); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *17 (S.D.N.Y. Oct. 7, 2019) (dismissing claims for lack of standing).

In *Retirement Board*, for example, the Second Circuit found that a plaintiff lacked standing where its claims, including for breach of contract, "turn[ed] on very different proof" in relation to different loans being held by different trusts at the same bank.  775 F.3d at 162.  The Court held that the issue of "whether [the defendant] breached its obligations under the governing agreements . . . require[d] examining its conduct with respect to each trust" because there is "no way in which answering these questions for the trusts in which Plaintiffs invested [would] answer the same questions for the numerous trusts in which they did not invest." *Id.*; *see also Patterson*, 2019 WL

4934834, at *4-7 (no standing to assert claims on behalf of absent class members who invested in funds in which the named plaintiffs did not invest).

So too here.  The plaintiffs purport to represent a class that consists not only of students in their particular school or program, but everyone who attended any program within NYU, whether it be undergraduate, graduate, or doctorate, in any discipline whatsoever, running the gamut from English, to musical theater, to real estate investment and finance, to the drama program, to medicine, to law, to statistics, to engineering, to education, and more.  The admissions-related materials describing these varied programs were different across NYU's various colleges, schools, and programs, and have changed over time.  *See* Exs. 30, 31.  And, the manner and method of the delivery of classes within each – much less across all – colleges, schools, and programs, varied, as did the student's subjective views of each course.

The plaintiffs base their contract claim on the representations that they allege NYU made to them.  Obviously, they were not exposed to representations made across each of NYU's disciplines, nor did any alleged contract encompass all of them.  Rather, their allegations highlight the differences between their circumstances and the circumstances of other NYU students: Ms. Morales argues that a student in the "English program" has a "critical[]" need to have "in-person access to peers and facilities" (Compl. ¶ 11), and Ms. Guidry repeatedly emphasizes that a student in the "Drama program" must have "in-person access to peers and facilities" to benefit from that specific program (*id.* ¶ 17).  Moreover, NYU provided different refunds for school or course-based fees or equipment.  *See* Exs. 22, 23.  Thus, "whether [NYU] breached its obligations under the governing agreements . . . require[s] examining its conduct with respect to" the different admissions materials for each school, college, and program, *see Ret. Bd.*, 775 F.3d at 162, and therefore the plaintiffs do not have standing to assert claims on those other students' behalf.

B.     **The Plaintiffs Lack Standing to Seek Injunctive Relief.**

The plaintiffs do not have standing to seek injunctive relief, and therefore their claims must be dismissed to the extent they seek such relief.  The "'irreducible constitutional minimum' of standing" requires a plaintiff to plead a "'concrete and particularized injury . . . fairly traceable to the challenged conduct of the defendant.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-1548 (2016) (quotation omitted).  A plaintiff "lack[s] standing to pursue injunctive relief [if he or she is] unable to establish a 'real or immediate threat' of injury."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).  "[P]ast injuries . . . [therefore] do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [he or she] is likely to be harmed again in the future in a similar way."  *Id.*

Here, the plaintiffs graduated and received their degrees at the conclusion of the spring 2020 semester, so they cannot possibly suffer any harm relating to future semesters at NYU. Accordingly, the plaintiffs do not and cannot allege a threat of future harm, and therefore do not have standing to seek injunctive relief.

IV.    **The Plaintiffs' Breach of Contract Claim Must Be Dismissed.**

The plaintiffs' breach of contract claim must be dismissed because the plaintiffs fail to allege: (1) a specific promise by NYU sufficient to establish a contract; (2) any breach of an alleged contract; or (3) any resulting damages or harm to the plaintiffs.  Further, even if there was a contract to provide in-person instruction (which there was not), Covid-19 and the related government edicts shuttering schools and businesses rendered NYU's performance impossible.

A.     **The Plaintiffs Have Not Identified a Specific Promise That Was Broken.**

The plaintiffs' breach of contract claim must be dismissed because they fail to allege a specific promise by NYU that was broken.  As an initial matter, the implied contract between NYU and each plaintiff was, at most, that NYU would provide them to ability to earn academic credits,

and ultimately a degree, in exchange for tuition payments.  *See Gally*, 22 F. Supp. 2d at 206 ("When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks.").  NYU performed: NYU continued to provide the plaintiffs with instruction and academic credits, and it conferred NYU degrees to them at the conclusion of the semester.  Thus, NYU did not breach this contract.

To the extent plaintiffs attempt to state a claim based on an implied contract arising out of the admissions materials, the claim fails.  To state a claim for breach of an implied contract against a university under New York law, "a plaintiff must identify: (1) a specific contract, (2) specified services offered or promises made, and (3) the university's failure to provide those services or keep those promises."  *Doe v. Columbia Univ.*, 2020 WL 1528545, at *5 (S.D.N.Y. Mar. 31, 2020) (dismissing breach of contract claim where plaintiff failed to "make specific, non-conclusory allegations" regarding how the defendant university breached an alleged contract).  "The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student" and "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted."  *Gally*, 22 F. Supp. 2d at 207.  "[O]nly specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract."  *Keefe v. New York Law Sch.*,71 A.D.3d 569, 570 (1st Dep't 2010) (affirming dismissal of breach of contract claim; no specific language where defendant "promised that it would utilize a pass/fail grading system").  General statements of policy are insufficient.  *See Anthes v. New York Univ.*, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57, 60 (2d Cir. 2019) (dismissing claim); *Ward v. New York Univ.*, 2000 WL 1448641, at *3-4 (S.D.N.Y. Sept. 28, 2000) (same).

In *Ward*, for instance, the plaintiff sought to premise her breach of contract claims against NYU on "a number of the University's general policy statements and broad and unspecified procedures and guidelines" including "that defendants promised: i) to provide a great learning environment for adult students; ii) to respect adult students and treat them with respect; iii) to not discriminate against adult students; iv) to provide supervision and teaching by honest and unbiased instructors; and v) to provide and to follow guidelines for student treatment." 2000 WL 1448641, at *4. Initially, the Court noted that "courts should not substitute their judgments for those of the educators" and that it was "reluctant to venture into the domain of the University." *Id.* at *3. The Court further held that the statements were insufficient in any event to serve as the basis for a breach of contract claim because they were "more akin to general statements of policy" and not "designated and discrete promises, relating to the incidents of the forthcoming education, such as the provision of a designated number of hours of instruction[.]" *Id.* (citation omitted).

Similarly, in *Cheves v. Trustees of Columbia University,* the plaintiff alleged that Columbia breached a contract with him by not permitting him on campus. 89 A.D.3d 463, 464 (1st Dep't 2011). The First Department affirmed dismissal of the contract claim, finding that "nothing in [the Alumni Relations brochure serving as the basis of the plaintiff's claims] guarantee[d] unfettered, irrevocable access for alumni to the campus or its facilities" and therefore "the complaint fails to rely on a specific promise material to plaintiff's relationship with Columbia that has been breached." *Id.*; *see also Anthes*, 2018 WL 1737540, at *13 (dismissing breach of contract claim).

Here, similarly, the plaintiffs do not specify a particular contract with NYU that was supposedly breached but rely on puffery and generic statements about learning opportunities and the NYU community at large. They do not point to any language promising that classes would be held in person. Instead, they point to the following statements: "[l]earning opportunities present

14

themselves both in and out of the classroom, befitting an institution that is and always has been 'in and of the city'" (Compl. ¶ 26); "[f]rom residence halls to clubs and organizations, these clubs will enrich your experience" (*id.* ¶ 27); "[w]hether studying, conducting research, sharpening your professional acumen, or building your network, you will be surrounded by scholars and peers who will enlighten and challenge you" (*id.* ¶ 28); "[n]o matter where you head on your journey after graduation, your fellow students could be your colleagues for life" (*id.* ¶ 28); and "University life at NYU is supplemented with a variety of resources and services provided by the University" (*id.* ¶ 29).  Like the statements in *Ward* and *Anthes*, these statements do not constitute a specific promise by NYU to provide a particular service (much less a promise to provide in-person classes), and therefore cannot serve as the basis for a breach of contract claim.  *See* 2000 WL1448641, at *4.  And, while the plaintiffs allege that NYU has the "best faculty" (Compl. at ¶¶ 24, 26–32), there is no allegation that their professors changed after Covid-19 required remote teaching.

Moreover, the statements on the webpages the plaintiffs rely upon have changed over time. For example, historical versions of the webpage indicate that the statement regarding "University life at NYU" (Compl. ¶ 29) did not appear on NYU's website until at least August 2016, after Ms. Guidry applied to and was accepted by NYU.  *See* Ex. 32.  Similarly, the "[w]hat makes NYU a unique place to learn" statement (Compl. ¶ 28) appeared on NYU's "Graduate Admissions" webpage, which is irrelevant since neither plaintiff was enrolled in a graduate program.  Further, the statement did not appear until sometime between February and August 2018, also after Ms. Guidry's acceptance.  *See* Exs. 30, 31.  Thus, those statements cannot form the basis of a contract between Ms. Guidry and NYU.

The plaintiffs also mention quotes from purported NYU students in different Change.org petitions—including from NYU's Silver School of Social Work, where neither Ms. Morales nor

Ms. Guidry was enrolled—in an attempt to support their claims.  Compl. ¶¶ 49, 51, 54, 55.  This attempt fails.  First, the Court need not presume the facts alleged in the Change.org petitions are true, as none of these facts "can be accurately and readily determined" and do not derive "from sources whose accuracy cannot reasonably be questioned."  F. R. Evid. 201(b)(2).[5]  Second, the petitions are not relevant.  None of these purported "students" are named plaintiffs and may not even be NYU students, as anyone has the ability to access and sign a Change.org petition.  Finally, the Complaint recites complaints by unidentified persons against other educational institutions, none of which provide a basis for a claim against NYU.  Compl. ¶¶ 51, 52.

The plaintiffs' breach of contract claim must be dismissed.

## B.    NYU Did Not Breach Any Contract.

Even if the plaintiffs' breach of contract claim was premised on a sufficiently specific promise by NYU (which it is not), the plaintiffs have not sufficiently alleged that NYU breached any such contract and therefore the breach of contract claim must be dismissed.  *See*, *e.g.*, *Ward*, 2000 WL 1448641, at *5.  "[S]tating in a conclusory manner that an agreement was breached," as the plaintiffs have done here, "does not sustain a claim of breach of contract."  *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016).

In *Ward*, the Court dismissed a breach of contract claim against NYU because "bald assertions and conclusory allegations claiming that the University's rules or procedures were not followed, do not state a valid claim" and the plaintiff "failed to allege any facts demonstrating that defendants failed to abide by the University's regulations or procedures."  2000 WL 1448641, at *5.  Similarly, in *Doe v. Columbia University*, the Court dismissed a breach of contract claim that

---

[5]    If the Court takes judicial notice of the Change.org petitions the Complaint references (which it should not), there were at least three other Change.org petitions urging NYU to close its campus to ensure the safety of students because of Covid-19.  *See* Exs. 33–34.

was "not viable because [the plaintiff] fails to make specific, non-conclusory allegations regarding how Columbia failed to comply with its disciplinary procedures."  2020 WL 1528545, at *6.

Here, as in *Ward* and *Doe v. Columbia*, the plaintiffs fail adequately to plead a breach by NYU.  They admit NYU upheld its end of the bargain: it continued to provide them educational services and it has awarded them academic credits through remote instruction and coursework. *See* Compl. ¶ 44.  Indeed, both Ms. Morales and Ms. Guidry earned sufficient credits during the Spring 2020 semester to graduate and earn their NYU degrees at the conclusion of the semester. *See Zagoria*, 1:20-cv-03610-GBD, ECF No. 13, at 6.  As a result, there is no breach of contract. *See Roe v. Loyola Univ. New Orleans*, 2007 WL 4219174, at *2-3 (E.D. La. Nov. 26, 2007) (rejecting breach of contract claim brought by student who attended classes at another school following Hurricane Katrina: "plaintiff was able to attend classes . . . receive those credits towards his Loyola degree, and graduate without any delay" and "Plaintiff has pointed to no [contractual] provision . . . that would entitle him to a free semester of law school.").

Additionally, under NYU's refund policy, to receive a full tuition refund, students were required to withdraw from their classes by February 24, 2020. Exs. 24–26.  NYU did not breach the terms of this policy by not providing tuition refunds *after* February 24, 2020.  NYU did issue refunds to students for certain services that could not be provided in light of Covid-19, including for room and board and meal plans.  *See* Exs. 20, 22, 23.

Moreover, the plaintiffs' breach of contract claim must be dismissed because they do not allege (nor could they plausibly allege) that NYU acted in bad faith.  To the extent an implied contract exists between students and a university, "[t]he essence of the implied contract is that an academic institution must act in good faith in its dealings with its students."  *Matter of Olsson v. Bd. of Higher Educ. of City of N.Y.*, 49 N.Y.2d 408, 414 (Ct. App. 1980).  Thus, "[b]reach of

contract claims brought by students against universities are 'subject to judicial review only to determine whether the defendants abided by their own rules and whether they have acted in good faith or their action was arbitrary or irrational.'" *Rodriguez v. New York Univ.*, 2007 WL 117775, at *5 (S.D.N.Y. Jan. 16, 2007) (dismissing claims) (quoting *Babiker v. Ross Univ. School of Med.*, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000), *aff'd* 86 F. App'x 457 (2d Cir. 2004)). Accordingly, courts dismiss breach of contract claims where there is no allegation that the university acted in bad faith. *See*, *e.g.*, *Ward*, 2000 WL 1448641, at *5 (dismissing claim); *Olsson*, 49 N.Y.2d at 414 (dismissing claim).

Here, the plaintiffs do not plead that NYU acted in bad faith to breach any applicable contract. While the plaintiffs premise their claims on statements regarding clubs, resources, and services (*see* Compl. ¶¶ 27, 29), they do not allege specifically that any of these resources or services were discontinued during the pandemic (and in fact they could not in good faith so allege, as NYU continued to operate nearly all resources and services remotely (*see* Ex. 27)). There is also no allegation that NYU interfered with students having good peer relationships or "colleagues for life." *See* Compl. ¶ 28. And, there is no allegation that NYU did not continue to make available the "best faculty" or that the plaintiffs' pre-Covid-19 faculty did not continue to teach them. *Id.* ¶¶ 24, 26–32. And, the plaintiffs acknowledge that NYU's actions were taken to respond to the Covid-19 pandemic, admitting that "the reasons for such closures are justified." *See id.* ¶¶ 43, 48. Accordingly, even if the statements on which the plaintiffs premise their claims were enough to specify a contract (which they are not), there is no colorable allegation that NYU acted in bad faith and breached any purported promise. As such, the breach of contract claim must be dismissed.

### C.      Covid-19 Rendered Performance of the Alleged Contract Impossible.

Even if the plaintiffs could make out a claim for breach of contract (which they cannot), Covid-19 and resulting government orders rendered NYU's performance impossible.

Impossibility excuses performance where the "destruction of the contract or the means of performance makes performance objectively impossible" as a result of "an unanticipated event that could not have been foreseen or guarded against in the contract." *Kolodin v. Valenti*, 115 A.D.3d 197, 200 (1st Dep't 2014); *see also Organizacion JD LTDA v. U.S. Dep't of Justice*, 18 F.3d 91, 95 (2d Cir. 1994) (affirming dismissal); *L. N. Jackson & Co. v. Royal Norwegian Gov't*, 177 F.2d 694, 697 (2d Cir. 1949) (reversing judgment for plaintiff on breach of contract claim where "performance [was] subsequently prohibited by an administrative order made with due authority by an officer of the United States").

In *Organizacion JD LTDA*, for instance, the plaintiffs sued two banks after the government seized money transfers intended for the plaintiffs on the basis that the transfers involved proceeds related to drug trafficking. 18 F.3d at 93. The plaintiffs asserted several causes of action, including breach of contract. *Id.* at 95. The Second Circuit affirmed the District Court's dismissal of the breach of contract claims on impossibility grounds, holding that "the private intermediary banks cannot be subject to a damage action because the intervening government actions in ordering the seizures of the [transfers] rendered any enforceable contract impossible to perform." *Id.*; *see also Kolodin*, 115 A.D. at 199-200 (finding impossibility where court order prevented performance).

Here, similarly, Covid-19 and the resulting government orders destroyed the means of NYU's performance with respect to certain allegations in the complaint. The plaintiffs point to NYU statements concerning various facilities and other alleged gathering places for students. *See* Compl. ¶¶ 30–31. Even if these statements created an enforceable contract (which they do not), NYU's ability to provide students with access to these locations and facilities was rendered impossible by Covid-19 and associated government orders, which limited public gatherings and

closed non-essential businesses.  Accordingly, any alleged non-performance by NYU is excused by impossibility, and the plaintiffs' breach of contract claims should be dismissed.

### D.     The Plaintiffs Failed Adequately to Allege Damages.

The plaintiffs' breach of contract claim also must be dismissed because they fail sufficiently to allege damages.  To state a claim for breach of contract under New York law, a plaintiff must  plead that the defendant breached its contract and the plaintiff suffered damages as a result of the defendant's alleged breach.  *See Doyle v. MasterCard Int'l Inc.*, 2016 WL 9649874, at *2 (S.D.N.Y. Dec. 15, 2016).  A claim must be dismissed where the plaintiff does not allege that they "suffered cognizable damages as required by New York law."  *See id.* at *2-3 (dismissing breach of contract claim).  Since the plaintiffs in fact received educational credits in exchange for tuition paid (*see* Compl. ¶ 44; *Zagoria v. NYU*, 1:20-cv-03610-GBD, ECF No. 13, at 6), they have not and cannot plead that they suffered any damages.

The plaintiffs also cannot claim they received no benefit from the period of remote instruction – as they did earn credits and degrees – yet they ask for 100 percent of their tuition back.  In reality, any claim that the fact that Covid-19 required some period of the semester's instruction to be remote somehow devalued their educations or NYU degrees is too speculative under New York law.  To ascertain liability and damages, the Court would have to examine the method and effectiveness of each course of instruction by each professor prior to Covid-19 and then after, assess the value of in-person instruction as compared to remote instruction as perceived by each of the named plaintiffs, on a course-by-course basis, and calculate the percentage of tuition (if any) that should be refunded on a course-by-course basis.  *See Mihalakis v. Cabrini Med. Ctr.* 151 A.D.2d 345, 346 (1st Dep't 1989) (the "difference between the value of the internship program provided by defendants and the value of an internship program having the characteristics that the defendant represented to plaintiff" was too speculative to support a fraud claim); *WestLB AG v.*

*BAC Fla. Bank*, 912 F. Supp. 2d 86,93 (S.D.N.Y. 2012) (allegations that plaintiff was damaged by "a general decline in the value" was "insufficient" damages for breach of contract claim).  Because the plaintiffs fail to allege any non-speculative way to do this analysis, they fail to allege any damages to support the claim for breach of contract and the claim must be dismissed.

**V.       The Plaintiffs' Unjust Enrichment Claim Must Be Dismissed.**

      **A.       The Unjust Enrichment Claim Must Be Dismissed As Duplicative.**

A claim for unjust enrichment must be dismissed where it is "merely duplicative of [the] other causes of action."  *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016); *see also Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. Jul. 20, 2016) (dismissing unjust enrichment claim as duplicative; unjust enrichment "is not a catchall cause of action" and "is not available where it simply duplicates, or replaces, a conventional tort of contract claim.") (quotations omitted).  In *Bytemark, Inc. v. Xerox Corp.*, for instance, the court dismissed as duplicative the plaintiff's unjust enrichment claim were it was "based on the same factual allegations" as a contract claim."  342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018).

Moreover, courts have held that students may not assert unjust enrichment claims against universities where the relationship is governed by a contract.  *See*, *e.g.*, *Yalincak v. New York Univ.*, 2009 WL 10714654, at *14 (D. Conn. Sept. 3, 2009) (applying New York law).  In *Yalincak*, the plaintiff, a former NYU student, asserted multiple claims against NYU, including for breach of contract and unjust enrichment.  *See id.* at *9-10, *14.  The Court dismissed the unjust enrichment claim, finding that "[a]s plaintiff acknowledges, he and NYU had an implied contract . . . governed by the university's bulletins and regulations.  Because Plaintiff and NYU had a contract, he cannot bring an action for unjust enrichment."  *Id.* (citation omitted).

The same result is compelled here.  The plaintiffs' unjust enrichment claim is premised on the same facts and seeks the same remedy as their breach of contract claim.  Their unjust enrichment claims are almost verbatim restatements of their breach of contract allegations:

| Unjust Enrichment Allegations | Breach of Contract Allegations |
|---|---|
| "Plaintiffs and the Class Members directly conferred non-gratuitous benefits upon Defendant, i.e., monetary payments for tuition, fees, and/or room and board, so that Plaintiffs and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities."  (Compl. ¶ 81). | "Plaintiffs and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services."(Compl. ¶ 75). |

The plaintiffs' unjust enrichment claim must be dismissed.

## B.   NYU Was Not Unjustly Enriched.

To state a claim for unjust enrichment under New York law, "a plaintiff must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) under the circumstances of such enrichment equity and good conscience require the defendant to make restitution." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014).  A mere allegation that a defendant "received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment."  *Samad v. Goldberg*, 2016 WL 6678923, at *9 (S.D.N.Y. Nov. 14, 2016) (quoting *Goel v. Ramachandran*, 111 A.D.3d 783, 791 (2d Dep't 2013)).  Instead, a plaintiff must establish that under the circumstances "it is against equity and good conscience to permit the defendant to retain what is sought to be recovered," *Goel*, 111 A.D.3d at 791 (quotation omitted), such as through allegations that there was "some mistake or deception practiced upon" the plaintiff by the defendant.  *Id.* at 792 (dismissing unjust enrichment claim); *see also*, *e.g.*, *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 209 (S.D.N.Y. 2016) (dismissing unjust enrichment claim).

Here, there are no allegations of mistake or deception. NYU did not deceive the plaintiffs into paying tuition or fees knowing that months or years later an unprecedented global pandemic followed by state-wide shelter-in-place orders would force NYU to take the unprecedented action to transition to remote instruction, and the plaintiffs did not mistakenly provide tuition payments to NYU under some false impression of what would happen in this scenario. Instead, the plaintiffs voluntarily paid tuition and fees to NYU in exchange for educational services and credits, which NYU provided, as well as a conferring a NYU degree. As such, if NYU "were required to reimburse plaintiff[s] for [their] tuition payments [they] made, plaintiff[s] would be unjustly enriched as a result." *See Roe*, 2007 WL 4219174, at *3 (rejecting unjust enrichment claim).

Where, as here, the plaintiffs "receive[] the benefits of the services defendants provided," the "plaintiff[s] do[] not have an equitable claim to return of the sums paid for such services." *Metal Cladding, Inc. v. Brassey*, 159 A.D.2d 958 (4th Dep't 1990); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002) (rejecting unjust enrichment claim). And, NYU refunded fees associated with certain services that could not be provided in light of Covid-19. *See* Exs. 22, 23. Accordingly, the unjust enrichment claim must be dismissed.

## VI.   The Plaintiffs' Conversion Claim Must Be Dismissed.

### A.     The Conversion Claim Must be Dismissed As Duplicative.

The plaintiffs' conversion claim fails as a matter of law because it is entirely duplicative of the breach of contract claim. "[A]n action for conversion cannot lie where damages are merely sought for breach of contract." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000) (dismissing conversion claim); *see also Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, 2009 WL 1110783, at *3 (S.D.N.Y. Apr. 21, 2009) (dismissing conversion claim; "[I]t is settled . . . that a claim of conversion cannot be predicated on a mere breach of contract.")

(quotation omitted).  Instead, "[w]here a conversion claim is grounded in a contractual dispute, the plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights." *OTG Brands, LLC v. Walgreen Co.*, 2015 WL 1499559, at *9 (S.D.N.Y. Mar. 31, 2015) (quotation omitted) (dismissing conversion claim).

Here, the plaintiffs' conversion claim is premised on the same allegations as their breach of contract claim.  Moreover, the plaintiffs do not and cannot include any allegations to suggest any unlawful or wrongful conduct by NYU beyond a purported breach of NYU's alleged contract with each plaintiff.  The plaintiffs submitted tuition payments to NYU, and in return NYU provided educational services, credits, and NYU degrees.  *See Armored Group*, 2009 WL 1110783, at *3 (dismissing conversion claim).  It would have been illegal and unsafe for NYU to require students to remain on campus to earn their degrees in defiance of Governor Cuomo's orders.  Because the conversion claim is premised entirely on an alleged breach of contract, it must be dismissed.

> **B.      The Plaintiffs Fail to State a Claim for Conversion.**

"To withstand a motion to dismiss in a conversion claim, a plaintiff must allege: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question[.]" *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (quotation omitted).  Here, the plaintiffs do not, and cannot, allege that the right to on-campus or in-person classes is property subject to a conversion claim, nor that the plaintiffs had ownership or possession over in-person classes.

> **1.      The Right To In-Person Classes Is Intangible Property Not Subject to a Conversion Claim.**

The conversion claim must be dismissed because "in-person education" (Compl. ¶ 89) classes are not tangible property and therefore not the proper subject of a conversion claim.  The

"conversion of intangible property is not actionable under New York law." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008) (dismissing conversion claim).  Tangible items that are the proper subject of conversion claim are some form of actual property, not "indefinite, intangible, and incorporeal species of property." *Matzan v. Eastman Kodak Co*., 134 A.D.2d 863, 864 (4th Dep't 1987) (dismissing conversion claim); *see also Zirvi v. Flatley*, 433 F. Supp. 3d 448, 466 (S.D.N.Y. 2020) (same). Because in-person classes are not "tangible" property, the plaintiffs' conversion claim must be dismissed.

### 2.    The Plaintiffs Had No Ownership Interest in In-Person Classes.

Finally, the conversion claim must be dismissed because the plaintiffs have failed to allege any facts establishing an ownership interest in in-person classes.  "Conversion is the exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession." *Citadel Mgmt.*, 123 F. Supp. 2d at 147.  Thus, "a plaintiff must allege" that the "plaintiff had ownership, possession or control over the property before its conversion." *Kirschner*, 648 F. Supp. 2d at 540; *see also Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C*., 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) (A "plaintiff must demonstrate that he has legal title or an immediate superior right of possession to the identifiable fund"); *OTG Brands*, 2015 WL 1499559, at *9-10 (dismissing conversion claim).

Here, the plaintiffs point to no evidence indicating an entitlement to classes conducted solely through in-person instruction.  Accordingly, the conversion claim must be dismissed.

### CONCLUSION

For the foregoing reasons, NYU's Motion to Dismiss should be granted, and the Complaint should be dismissed with prejudice.

Dated: August 4, 2020                    Respectfully submitted,

                                         **DLA PIPER LLP (US)**


                                         _  /s/  Keara M. Gordon_____
                                         Brian S. Kaplan
                                         Keara M. Gordon
                                         Colleen Carey Gulliver
                                         Rachael C. Kessler
                                         1251 Avenue of the Americas
                                         New York, New York 10020-1104
                                         Phone: (212) 335-4500
                                         Facsimile: (212) 335-4501
                                         brian.kaplan@us.dlapiper.com
                                         keara.gordon@us.dlapiper.com
                                         colleen.gulliver@us.dlapiper.com
                                         rachael.kessler@us.dlapiper.com

                                         _Attorneys for Defendant New York University_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am one of the attorneys for the defendant in this action and that on August 4, 2020, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

<u>/s/ *Keara M. Gordon*     </u>
Keara M. Gordon