**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERINA MORALES, ADRIANA GUIDRY, and ERIKA CHAMBERS on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NEW YORK UNIVERSITY,<br><br>        Defendant. | Case No. 1:20-cv-04418-GBD |

**DEFENDANT NEW YORK UNIVERSITY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE PLAINTIFFS'
<u>FIRST AMENDED COMPLAINT</u>**

**DLA PIPER LLP (US)**

Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ........................................................................................................4

    A.   NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees. ....................................................................................................4

    B.   The Covid-19 Pandemic Forces NYU's Transition to Remote Learning. ................................5

    C.   NYU Provides Certain Refunds to Students. ..........................................................................5

    D.   The Plaintiffs. ...........................................................................................................................6

ARGUMENT ..........................................................................................................................8

I.     Standard of Review ...........................................................................................................8

II.    The Plaintiffs' Claims Should Be Dismissed Because the Court Should Not Intervene in Educational Decisions ..........................................................................................9

III.   The Plaintiffs Do Not Have Article III Standing to Assert Certain Claims. ...................12

    A.   The Plaintiffs Lack Standing to Assert Claims Relating to Colleges, Schools, and Programs in Which They Were Not Enrolled. ...............................................................12

    B.   The Plaintiffs Lack Standing to Seek Injunctive Relief. ......................................................13

IV.   The Plaintiffs' Breach of Contract and Breach of Implied Contract Claims Fail. ..........................................................................................................................................14

    A.   Notations in the Course Registration System Regarding Class Locations and Mode of Instruction Do Not Create an Enforceable Contract. ..................................................14

    B.   The Plaintiffs Have Not Identified a Specific Promise That Was Broken. ..........................17

    C.   There Are No Allegations NYU Acted in Bad Faith. ..........................................................20

    D.   Covid-19 Rendered Performance Impossible. .....................................................................21

    E.   The Plaintiffs Failed Adequately to Allege Damages. .........................................................22

V.    The Plaintiffs' Unjust Enrichment Claim Must Be Dismissed. .......................................23

    A.   The Unjust Enrichment Claim Is Duplicative of the Breach of Contract Claim. .................23

    B.   NYU Was Not Unjustly Enriched. ......................................................................................24

VI.   The Plaintiffs' Conversion Claim Must Be Dismissed. ...................................................26

    A.   The Conversion Claim Is Duplicative of The Breach of Contract Claim. ...........................26

    B.   The Plaintiffs Fail to State a Claim for Conversion. ............................................................26

VII.  The Plaintiffs' Money Had and Received Claim Must Be Dismissed. ............................28

    A.   The Plaintiffs' Relationship with NYU Is Governed by Agreement. ..................................28

    B.   The Plaintiffs Fail to State a Claim for Money Had and Received. .....................................28

CONCLUSION ......................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*,
  731 F.2d 112 (2d Cir. 1984).........................................................................28

*Andre v. Pace Univ.*,
  655 N.Y.S.2d 777 (2d Dep't 1996).................................................................9

*Anthes v. New York Univ.*,
  2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v.
  Nelson*, 763 F. App'x 57 (2d Cir. 2019) ......................................................18

*Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*,
  2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009)...............................................26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................8

*Barsoumian v. Williams*,
  29 F. Supp. 3d 303 (W.D.N.Y. 2014) .............................................................9

*Bautista v. CytoSport, Inc.*,
  223 F. Supp. 3d 182 (S.D.N.Y. 2016)...........................................................23

*Belda v. Doerfler*,
  2015 WL 5737320 (S.D.N.Y. Sept. 30, 2015)...............................................28

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
  2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018).....................................................4

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005)............................................................................4

*Cheves v. Tr. of Columbia Univ.*,
  89 A.D.3d 463 (1st Dep't 2011) ...................................................................18

*Chong v. Northeastern University*,
  2020 WL 5847626 (D. Mass. Oct. 1, 2020)...................................15, 18, 23

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
  123 F. Supp. 2d 133 (S.D.N.Y. 2000)......................................................26, 27

*Cooper v. Peterson*,
  626 N.Y.S.2d 432 (N.Y. Sup. Ct. 1995) ....................................................14, 15

*Cuesnongle v. Ramos*,
  713 F.2d 881 (1st Cir. 1983) .........................................................................14

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
  352 F.3d 775 (2d Cir. 2002) ..........................................................................16

*Deen v. New School Univ.*,
  2007 WL 1032295 (S.D.N.Y. Mar. 27, 2007) ...............................................16

*DiMuro v. Clinique Labs. LLC*,
  572 F. App'x 27 (2d Cir. 2014) .....................................................................12

*Doe v. Columbia Univ.*,
  2020 WL 1528545 (S.D.N.Y. Mar. 31, 2020) ...............................................17

*Doherty v. S. Coll. of Optometry*,
  862 F.2d 570 (6th Cir. 1988) .........................................................................16

*Doyle v. MasterCard Int'l Inc.*,
  2016 WL 9649874 (S.D.N.Y. Dec. 15, 2016) ...............................................22

*Freedberg v. J.P. Morgan Chase & Co.*,
  2016 WL 7495181 (S.D.N.Y. Dec. 22, 2016) ...............................................4

*Gally v. Columbia Univ.*,
  22 F. Supp. 2d 199 (S.D.N.Y. 1998) .............................................10, 15, 17, 18

*Global Entm't, Inc. v. New York Tel. Co.*,
  2000 WL 1672327 (S.D.N.Y. Nov. 6, 2000) ...........................................28, 29

*Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*,
  288 F. Supp. 2d 473 (S.D.N.Y. 2003) ...........................................................27

*Goel v. Ramachandran*,
  111 A.D.3d 783 (2d Dep't 2013) ...................................................................25

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...............................................................24

*United States ex rel. Hanks v. U.S.*,
  961 F.3d 131 (2d Cir. 2020) ............................................................................8

*Hauptman v. Interactive Brokers, LLC*,
  349 F. Supp. 3d 292 (S.D.N.Y. 2018) ...........................................................30

*High View Fund, L.P. v. Hall*,
  27 F. Supp. 2d 420 (S.D.N.Y. 1998) .............................................................27

*Int'l Bus. Machs. Corp. v. Dale*,
   2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011) ........................................................22

*Jeffers v. Am. Univ. of Antigua*,
   125 A.D.3d 440 (1st Dep't 2015) ...............................................................23, 26

*Kamdem-Ouaffo v. Pepsico, Inc.*,
   2015 WL 1011816 (S.D.N.Y. Mar. 9, 2015) .........................................................24

*Keefe v. New York Law Sch.*,
   71 A.D.3d 569 (1st Dep't 2010) ...........................................................................18

*Keles v. New York Univ.*,
   1994 WL 119525 (S.D.N.Y. Apr. 6, 1994) ...........................................................16

*King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*,
   2009 WL 5033960 (S.D.N.Y. Dec. 23, 2009) .......................................................24

*Kirschner v. Bennett*,
   648 F. Supp. 2d 525 (S.D.N.Y. 2009) ...........................................................26, 27

*Kolodin v. Valenti*,
   115 A.D.3d 197 (1st Dep't 2014) ..........................................................................21

*L. N. Jackson & Co. v. Royal Norwegian Gov't*,
   177 F.2d 694 (2d Cir. 1949) ..................................................................................21

*Leslie v. New York Univ.*,
   2020 WL 5819730 (Sup. Ct. N.Y. Cty. Sept. 29, 2020) ..........................................9

*Magi XXI, Inc. v. Stato Della Cita Del Vaticano*,
   22 F. Supp. 3d 195 (E.D.N.Y. 2014) ....................................................................28

*Mahavongsanan v. Hall*,
   529 F.2d 448 (5th Cir. 1976) ................................................................................15

*Mahoney v. Endo Health Solutions, Inc.*,
   2016 WL 3951185 (S.D.N.Y. Jul. 20, 2016) ........................................................23

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ...............................................................................4, 8

*Mangla v. Brown Univ.*,
   135 F.3d 80 (1st Cir. 1998) ..................................................................................16

*Metal Cladding, Inc. v. Brassey*,
   159 A.D.2d 958 (4th Dep't 1990) ..........................................................................25

iv

*Mihalakis v. Cabrini Med. Ctr.*
151 A.D.2d 345 (1st Dep't 1989) ......................................................................22

*Morrison v. Nat'l Austl. Bank Ltd.,*
547 F.3d 167 (2d Cir. 2008).............................................................................8

*Mueller v. Michael Janssen Gallery Pte. Ltd.,*
225 F. Supp. 3d 201 (S.D.N.Y. 2016)..............................................................25

*In re Musicland Holding Corp.,*
386 B.R. 428 (S.D.N.Y. 2008)..........................................................................27

*Nicosia v. Amazon.com, Inc.,*
834 F.3d 220 (2d Cir. 2016).............................................................................13

*Olsson v. Bd. of Higher Educ. of City of N.Y.,*
49 N.Y.2d 408 (1980) ................................................................................20, 21

*Organizacion JD LTDA v. U.S. Dep't of Justice,*
18 F.3d 91 (2d Cir. 1994).................................................................................21

*OTG Brands, LLC v. Walgreen Co.,*
2015 WL 1499559 (S.D.N.Y. Mar. 31, 2015) ..............................................26, 27

*Panix Promos., Ltd. v. Lewis,*
2002 WL 122302 (S.D.N.Y. Jan. 22, 2002) ......................................................28

*Patterson v. Morgan Stanley,*
2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ......................................................12

*Prusack v. New York,*
117 A.D.2d 729 (2d Dep't 1986) ......................................................................16

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.,*
2005 WL 1214281 (S.D.N.Y. May 20, 2005) ......................................................9

*Regents of Univ. of Michigan v. Ewing,*
474 U.S. 214 (1985).........................................................................................20

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v.
Bank of N.Y. Mellon,*
775 F.3d 154 (2d Cir. 2014)........................................................................12, 13

*Rodriguez v. New York Univ.,*
2007 WL 117775 (S.D.N.Y. Jan. 16, 2007) ......................................................20

*Roe v. Loyola Univ. New Orleans,*
2007 WL 4219174 (E.D. La. Nov. 26, 2007) ................................................17, 25

v

*Samad v. Goldberg*,
   2016 WL 6678923 (S.D.N.Y. Nov. 14. 2016) .......................................................24

*Schachter v. U.S. Life Ins. Co. in City of New York*,
   77 F. App'x 41 (2d Cir. 2003) .............................................................................8

*Soueidan v. St. Louis Univ.*,
   926 F.3d 1029 (8th Cir. 2019) ............................................................................10

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .........................................................................................13

*Tasini v. New York Times Co., Inc.*,
   184 F. Supp. 2d 350 (S.D.N.Y. 2002) ...................................................................8

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*,
   196 F. Supp. 2d 378 (S.D.N.Y. 2002) .................................................................25

*Villareal v. Chamberlain Coll. of Nursing and Health Sciences Inc.*,
   2019 WL 4736488 (S.D. Tex. Sept. 27, 2019) ..............................................16, 29

*Ward v. New York Univ.*,
   2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) ...........................................18, 19, 21

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015) ...................................................................24

*Weiss v. Rutgers Univ.*,
   2014 WL 2608201 (D.N.J. June 10, 2014) .....................................................27, 28

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015) ...................................................................4

*WestLB AG v. BAC Fla. Bank*,
   912 F. Supp. 2d 86 (S.D.N.Y. 2012) ...................................................................22

*Yalincak v. New York Univ.*,
   2009 WL 10714654 (D. Conn. Sept. 3, 2009) ...............................................23, 25

## Other Authorities

Fed. R. Civ. P. 12(b)(1) ...............................................................................................8

Fed. R. Civ. P. 12(b)(6) ...............................................................................................8

Fed. R. Evid. 201(b)(2) ..............................................................................................20

## PRELIMINARY STATEMENT

The novel coronavirus disease 2019 ("Covid-19") unleashed unprecedented and unanticipated threats to global public health and safety. Public health officials and New York State issued directives designed to protect the public – including the students, faculty, and staff at universities including defendant New York University ("NYU") – from the growing danger of Covid-19. These directives and the threats attendant to large groups congregating on a college campus forced NYU to make the difficult but well-considered decision to transition to remote teaching for the remainder of the Spring 2020 semester. Notwithstanding the significant logistical effort and expense involved, NYU and its faculty remained committed to delivering world-class education by implementing creative ways to conduct nearly all classes by remote instruction.

NYU followed through on its commitment. Professors continued to teach; students continued to learn. *See, e.g.*, Ex. 1.[1] Professors rapidly adapted; NYU held remote classes across its 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study. *See* Exs. 2–5. Every day, faculty worked to deliver NYU's intellectually stimulating educational content in new and different ways, and students continued to benefit from those efforts. Ex. 1. And, at the end of the semester, thousands of NYU students, including the plaintiffs, received education credits and, like two of the plaintiffs, earned their degrees. *See* Ex. 6; *Zagoria v. New York Univ.*, 1:20-cv-03610-GBD, ECF No. 13, at 6 (Guidry and Morales are "NYU graduate[s]").

Nevertheless, and despite the fact that Covid-19, not NYU, required the transition to remote learning, plaintiffs Serina Morales, Adriana Guidry, and Erika Chambers (the "plaintiffs") brought

---

[1]  "Ex." refer to the exhibits attached to the Declaration of Keara M. Gordon, dated October 6, 2020.

a putative class action against NYU that: asks this Court effectively to second guess the judgment of NYU's educators and administrators in transitioning to remote learning; argues that, in the plaintiffs' opinion, the remote learning environment to which NYU's faculty was forced to transition, and the manner in which each of their teachers then delivered that instruction, was ineffective (apparently in total); and demands the return of the plaintiffs' tuition and fees.[2]

In response to the plaintiffs' first complaint, NYU moved to dismiss. In its motion, NYU demonstrated that each of their claims failed for numerous reasons. The plaintiffs' Amended Complaint ("AC") fails to remedy any of those deficiencies.

The plaintiffs' allegation that they would not have gone to NYU if they had known that NYU would be forced, months or years later, by Governor Cuomo to stop in-person classes because of an unprecedented pandemic and that the pivot to remote instruction somehow harmed them is implausible – particularly given that virtually every other university in the U.S. did the same. Equally unavailing is the claim that they understood that NYU was promising "in person" instruction (apparently even when illegal) simply because its online course selection system included a physical class location. Such a notation is insufficient to create a binding contract for "in person classes," but, in any event, any such understanding (if one ever really existed) would have been unreasonable as a matter of law, particularly given NYU's express disclaimer that NYU had the "right" to "change without notice at any time at the sole discretion of the administration," the "course offerings, schedules … and calendar of the school and its departments and programs," including (but not limited to) "the *elimination* of the school, programs, *classes*, or activities; the

---

[2]       Three other sets of plaintiffs also filed actions against NYU. *See Rynasko v. New York Univ.*, No. 1:20-cv-3250-GBD (S.D.N.Y., filed Apr. 24, 2020), *Zagoria v. New York Univ.*, No. 1:20-cv-3610-GBD (S.D.N.Y., filed May 8, 2020), *Romankow v. New York Univ.*, No. 1:20-cv-04616-GBD (S.D.N.Y., filed Jun. 16, 2020).

*relocation* of or *modification* of the content of any of the foregoing; and the *cancellation* of scheduled classes or other academic activities." Exs. 7, 8 (emphasis added).

The plaintiffs assert five claims: (1) breach of contract; (2) breach of implied contract; (3) unjust enrichment; (4) conversion; and (5) money had and received. All fail:

- At their core, each of the plaintiffs' claims impermissibly asks this Court to second guess NYU's educational decisions including the manner and effectiveness of the provision of educational services, which longstanding New York precedent precludes; indeed, what they seek would require the Court to review and assess *each* plaintiff's (and potentially the entire putative classes') course materials, syllabi, assignments, the method of teaching provided both before and after the transition to remote learning, any subsequent lessening of effectiveness (however measured), the student's input and work product, the student's subjective learning preferences, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or promised standard (whatever that may be) (*see* Section II);

- The plaintiffs lack standing to assert certain claims. They (1) cannot assert claims on behalf of absent putative class members who attended colleges, schools, or programs within NYU that they did not attend and who were exposed to different admissions material and educational content – the experience will differ for example, between graduate students versus undergraduates, law students versus medical students, versus engineering students, versus MBAs, versus actors, versus dancers, versus education majors, versus biology majors; and (2) cannot seek injunctive relief, as Ms. Morales and Ms. Guidry graduated and Ms. Chambers is now aware that future semesters may be conducted remotely if Covid-19 health-related threats and public safety require that course of action (*see* Section III);

- The breach of express and implied contract claims must be dismissed: (1) plaintiffs could not reasonably relied on course notations as an alleged promise of in-person courses, particularly in light of NYU's express disclaimer language; (2) they otherwise fail to allege a specific promise by NYU that it broke; (3) there are no allegations NYU acted in bad faith; (4) Covid-19 and the related government edicts closing schools rendered NYU's performance impossible; and (5) damages are too speculative (*see* Section IV);

- The unjust enrichment claim must be dismissed: (1) it is duplicative; and (2) the plaintiffs have not pled that NYU was unjustly enriched (*see* Section V);

- The conversion claim fails because: (1) it is duplicative; (2) the plaintiffs' tuition payments are not specific tangible funds; and (3) the plaintiffs did not have an ownership interest in the payments and NYU did not exercise unauthorized control (*see* Section VI); and

- The money had and received claim fails because: (1) a contract governed the parties' relationship; (2) the plaintiffs intentionally paid money to NYU in exchange for its performance and they have not sufficiently alleged that equity and good conscience requires the return of the money; and (3) they do not allege any specific benefit to NYU

resulting from the tuition payments (*see* Section VII).

Respectfully, the Court should dismiss the AC with prejudice and without leave to amend.

## STATEMENT OF FACTS

**A.      NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees.**

NYU is an educational institution that, during the 2019-2020 school year alone, delivered higher education to over 50,000 enrolled undergraduate and graduate students.  *See* AC ¶ 2. NYU's academic offerings include certificate programs, accelerated programs, study abroad, exchange programs, part-time studies, full-time studies, and associate, bachelor's, post-bachelor's, master's, post-master's, and doctoral programs.  *See, e.g.*, Exs. 2–5.[3]  These wide-ranging academic offerings are delivered through NYU's 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study.  *Id.*  Many of NYU's different schools and colleges have their own admissions process (*see*, *e.g.*, Exs. 9–13) and use different admissions-related materials for prospective students, on different websites, which highlight the distinct aspects unique to them, and which have changed over time (*see*, *e.g.*, Exs. 14–16).

NYU assesses each student's tuition and fees based on the student's circumstances,

---

[3]      NYU accepts the plaintiffs' allegations as true except to the extent that they are contradicted by documentary evidence.  NYU reserves the right to dispute their accuracy if the case proceeds (which it should not).  But the Court is not required to accept as true allegations that are contradicted by documents.  When a "complaint relies on the terms of [an] agreement," the Court "may look to the agreement itself."  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).  The Court may consider official documents, publicly available documents, and published websites.  *See, e.g.*, *Freedberg v. J.P. Morgan Chase & Co.*, 2016 WL 7495181, at *1 n. 1 (S.D.N.Y. Dec. 22, 2016) (admissions in pleadings); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166–67 (S.D.N.Y. 2015) ("official government websites [and] governmental records"); *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *3 (E.D.N.Y. Oct. 1, 2018) ("documents on published websites").  The Court can consider materials beyond the pleadings to resolve a factual challenge to the Court's jurisdiction. *See*, *e.g.*, *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).

including the school within NYU, the program within that school, and the particular courses taken. *See* AC ¶ 72 ("Fees paid … vary based on program of study").  NYU specifically informs all students that they "are assessed tuition and fees based on the factors below: School or College within [NYU] … Program … [and] Credit Hours Enrolled," not by any other factors (such as mode or location of instruction or course content).  Ex. 17.  NYU further reserves all rights to change its tuition and fees through disclaimers on its webpage and in course bulletins.  For example, it warns, "Disclaimer: The Board of Trustees of New York University reserves the right to alter the schedule of fees without notice" and "[T]uition, fees … *are subject to change without notice at any time at the sole discretion of the administration*."  Exs. 17, 7, 8 (emphasis added).

### B.   The Covid-19 Pandemic Forces NYU's Transition to Remote Learning.

On March 7, 2020, Governor Andrew Cuomo declared a State of Emergency across New York due to a rapid increase in confirmed cases of Covid-19.  Ex. 18.  Nine days later, Governor Cuomo issued an expanded Executive Order; he closed all schools, prohibited all large gatherings, and shuttered bars and restaurants.  Exs. 19–20.  That same day, consistent with the government orders and to protect the health and safety of its community, NYU announced the difficult, but essential, decision to move to remote learning for the duration of the semester, following its previous announcements of a temporary transition.  Exs. 21–23.  On March 20, 2020, Governor Cuomo announced the "New York State on PAUSE" Executive Order, which "ban[ned] all non-essential gatherings of individuals of any size for any reason."  Ex. 24.

### C.   NYU Provides Certain Refunds to Students.

After suspending in-person instruction and closing virtually all of its residence halls, NYU refunded a *pro rata* amount of housing and meal costs.  Ex. 23.  NYU also refunded certain activity fees, following evaluation of "dozens of individual school- and course-based fees for the purpose of determining potential refunds."  Ex. 25; *see* Ex. 26.  NYU continued to provide numerous

services, such as career services, student health, academic support, advising, and information technology support; it did not refund fees for those services that it continued to supply.  Ex 27.

Consistent with its policy that students who remain enrolled in at least one course are not eligible for a refund after February 10, 2020 and students who withdraw from all classes are not eligible for a refund after February 24, 2020 (*see* Exs. 28–30), and because students continued to receive instruction remotely, earn credits and graduate, NYU has not refunded tuition.  *See* Ex. 27.

### D.    The Plaintiffs

1.    *Serina Morales*: Serina Morales is a former English major in NYU's College of the Arts and Sciences ("CAS").  AC ¶ 16.  She was accepted to NYU in 2018.  Ex. 31. Before Ms. Morales registered for her Spring 2020 courses (*see* Ex. 32), CAS released its "University Bulletin," which included a disclaimer that "[p]ayment of tuition or attendance at any classes … constitute[d] [the] student's acceptance of the administration's rights" as follows:

> The policies, requirements, course offerings, schedules, activities, tuition, fees, and calendar of the school and its departments and programs … *are subject to change without notice at any time at the sole discretion of the administration.* Such changes may be of any nature, including, but not limited to, the elimination of the school, programs, classes, or activities; the relocation of or modification of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities.

*See e.g.*, Ex. 7 (emphasis added).  Ms. Morales graduated at the end of the Spring 2020 semester. *See Zagoria*, 1:20-cv-03610-GBD, ECF No. 13, at 6.

2.    *Adriana Guidry*: Adriana Guidry is a former Drama major in the Tisch School of the Arts ("Tisch").  AC ¶ 16.  She was accepted to NYU on April 1, 2016.  Ex. 33. Before Ms. Guidry registered for her Spring 2020 courses (*see* Ex. 32), Tisch released its "University Bulletin," which included an identical disclaimer to the CAS disclaimer.  Ex. 8.  Ms. Guidry also graduated at the end of the Spring 2020 semester.  *See Zagoria*, 1:20-cv-03610-GBD, ECF No. 13, at 6.

3.      *Erika Chambers*: Erika Chambers is a graduate student in NYU's Silver School of Social Work ("Silver").  AC ¶ 34.  She was accepted to NYU on January 18, 2019 and is currently enrolled.  *See* Ex. 34.  Prior to her enrolling in classes for Fall 2020, NYU made clear that some or all classes during that time "may be delivered remotely."  Ex. 35.

4.      *The Plaintiffs' Allegations*:  The plaintiffs allege that NYU should refund their tuition because they allegedly were unable to have "constant interaction with and feedback from peers, mentors, professors, and guest lecturers" (AC ¶¶ 22, 31, 40), access to facilities, "technology, libraries, and laboratories," "spectator sports and athletic programs," "student government and health services," or the ability to "participat[e] in extracurricular groups and learning" due to Covid-19.  *Id.* ¶¶ 22, 31, 40.  They reference undated website pages that discuss New York City's benefits, such as "some pretty good food," and promote NYU's "community of communities" and fellow students who will be "colleagues for life."  *See id.* ¶¶ 52, 55, 56, 59.

The AC claims that notations in NYU's online platform for registration (mistakenly identified as a "Course Catalogue") as to the location of particular courses indicates an "in-person" component to the contract.  *Id.* ¶¶ 13, 18, 27, 36, 111.  But, the particular location or mode of instruction was not a  material term of any contract, and any such expectation would have been unreasonable as a matter of law, particularly as to Ms. Morales and Ms. Guidry, because CAS and Tisch each had bulletins that included a disclaimer that course offerings and the details thereof were "subject to change without notice at any time at [NYU's] sole discretion."  Exs. 7, 8.

The plaintiffs admit that "the reasons for" NYU's transition to remote learning "are justified," but allege that remote instruction was "not the same," "limited," "void of … interaction," and not "comprehensive" (*see* AC ¶¶ 8, 9, 87), which they claim entitles them to a refund.  *Id.* ¶ 14.  But, they admit that NYU has already "refunded a … portion of the mandatory

fees." *Id.* ¶ 107.  The plaintiffs seek to represent a putative class that includes students, parents, grandparents, employers, and possibly others, who paid tuition or fees for the NYU Spring Semester 2020, which have not been refunded, as well as subclasses consisting of putative class members residing in New York and New Jersey.  *Id.* ¶¶ 116; *see* Ex. 36.

## ARGUMENT

### I.   <u>Standard of Review</u>

In deciding Rule 12(b)(6) motions to dismiss, courts apply a "plausibility standard," which is guided by "[t]wo working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, although the Court must accept all of a complaint's well-pled allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Second, only complaints that state a "plausible claim for relief" may survive a motion to dismiss.  *Id.* at 679.

"A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova,* 201 F.3d at 113; *see also Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (same).  Courts lack subject matter jurisdiction when the plaintiff does not have Article III standing.  *Schachter v. U.S. Life Ins. Co. in City of New York,* 77 F. App'x 41, 42 (2d Cir. 2003).  In a factual standing challenge, as NYU makes here, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts."  *Tasini v. New York Times Co., Inc.*, 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002) (citations and internal quotations marks omitted) (collecting cases); *see also United States ex rel. Hanks v. U.S.*, 961 F.3d 131, 137 (2d Cir. 2020) (a factual challenge "imposed on [plaintiff] the burden to show by a preponderance of the evidence" that the district court had jurisdiction).

II.     **The Plaintiffs' Claims Should Be Dismissed Because the Court Should Not Intervene in Educational Decisions.**

As a threshold matter, the plaintiffs' claims should be dismissed because they are premised on allegations that improperly ask the Court to evaluate whether NYU made the right decision to transition to remote learning, and then, once made, to examine whether individual faculty members failed to provide an effective education in particular courses during the period of remote instruction.   "[C]ourts retain a 'restricted role' in dealing with and reviewing controversies involving colleges and universities."  *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 2005 WL 1214281, at *10-11 (S.D.N.Y. May 20, 2005) (finding that student failed to state a breach of contract claim) (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999) (affirming dismissal of breach of contract claim and noting that administrators are "better suited" to make decisions)).   "It is the longstanding policy of the New York courts that 'the administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are … better suited to make relatively final decisions concerning wholly internal matters.'"  *Leslie v. New York Univ.*, 2020 WL 5819730, at *4 (Sup. Ct. N.Y. Cty. Sept. 29, 2020) (citation omitted).

It is well-settled that New York does not recognize claims that require the Court to second guess the decisions of educators or are akin to claims "that the school breached its agreement by failing to provide an effective education," such as where a court would have to "evaluate the course of instruction" or "review the soundness of the method of teaching ... "  *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 779 (2d Dep't 1996) (citation and internal quotation marks omitted) (reversing trial court judgment for student).   "Such inquiry would constitute a clear 'judicial displacement of complex educational determinations' that is best left to the educational community."  *Id.* (quoting *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868 (2d Dep't 1982)); *see also*, *e.g.*, *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 322 (W.D.N.Y. 2014) (dismissing breach of contract claim claiming

that school "failed to provide [plaintiff] 'with an education environment conducive to learning'");
*see also Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir. 2019) (citation and internal
quotation marks omitted) ("A claim that educational services provided were inadequate,
substandard, or ineffective constitutes a claim of educational malpractice.").

Indeed, "[n]ot every dispute between a student and a university is amenable to a breach of
contract claim ... Where the essence of the complaint is that the school ... fail[ed] to provide an
effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule
that there is no claim in New York for 'educational malpractice.'" *Gally v. Columbia Univ.*, 22 F.
Supp. 2d 199, 206–207 (S.D.N.Y. 1998) (dismissing breach of contract claim). "[E]ven while
applying contract principles, the courts have been careful to disallow claims that would involve
the judiciary in reviewing the day-to-day judgments of educators." *Id.* at 209.

This longstanding line of authority is directly applicable here. In *Paynter v. New York
Univ.*, for example, the plaintiff sued for a tuition refund after NYU suspended classes on May 7,
1970 as a result of anti-war demonstrations. 319 N.Y.S.2d 893, 893 (1st Dep't 1971). The First
Department reversed the trial court's decision that a refund was warranted and held that the trial
court "erred in substituting its judgment for that of the University administrators and in concluding
that the University was *unjustified* in suspending classes for the time remaining in the school year
prior to the examination period." *Id.* at 894 (emphasis added). In so doing, the Court recognized
the general principle that "[p]rivate colleges and universities are governed on the principle of self-
regulation ... and they have inherent authority to maintain order on their campuses." *Id.* The
Court expressly observed that, "while in a strict sense, a student contracts ... for a number of
courses to be given during the academic year, the services rendered by the university cannot be
measured by the time spent in a classroom." *Id.*

The same result follows here.  Each plaintiff challenges NYU's decision to move all courses to remote instruction and alleges that, in her opinion, the resulting education that each faculty member provided in each class was not as effective.  *See* AC ¶ 8.  Specifically, they:

- contend that the remote classes offered were "not the same," "limited," "void of … interaction," and not "comprehensive" (*see id.* ¶¶ 8, 9);

- cite to a number of statistics purportedly establishing the difference in the effectiveness of online education and in-person education (*see id.* ¶¶ 94-99); and

- repeatedly quote various individuals' hearsay statements regarding the purported lesser quality and effectiveness of online education, such as that it was "substandard." *See e.g.*, *id.* ¶¶ 11, 90.

As a result, to adjudicate this dispute, the Court would need to examine and evaluate the actual quality of the education provided, which would require the Court to review and assess the plaintiffs' (and potentially every NYU student's) course materials, syllabi, objectives, assignments, the method of teaching provided, both before and after the transition to remote learning, its effectiveness (however measured), the student's input and work product, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or purportedly promised standard.  Such an analysis would be further complicated by the fact that this calculus may be different depending upon whether the course at issue is statistics versus Shakespeare, versus law, versus medicine, versus finance, versus education, versus engineering, and versus chemistry.  And, the Court would need to factor in the subjective desires and preferences of students, which are not uniform and many of whom learn differently.  Well-established precedent mandates that the Court should not wade into such day-to-day judgments of educators.  Accordingly, the AC must be dismissed.

III.    **The Plaintiffs Do Not Have Article III Standing to Assert Certain Claims**.

    A.    **The Plaintiffs Lack Standing to Assert Claims Relating to Colleges, Schools, and Programs in Which They Were Not Enrolled.**

The plaintiffs do not have standing to assert claims related to the various schools, colleges, and programs they did not attend.  Courts hold that a named plaintiff lacks standing to assert claims on behalf of putative class members where the putative class members' claims would not raise "a set of concerns nearly identical" to theirs.  *DiMuro v. Clinique Labs. LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (citation and internal quotation marks omitted) (dismissing claims for lack of standing because "each of the seven different products have different ingredients, and [defendant] made different advertising claims for each product" thus "[e]ntirely unique evidence" would be required to assess claims pertaining to each product); *see, e.g.*, *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *17 (S.D.N.Y. Oct. 7, 2019).

In *Retirement Board*, for example, the Second Circuit found that a plaintiff lacked standing where its claims, "turn[ed] on very different proof" for different loans being held by different trusts at the same bank.  775 F.3d at 162. (citation and internal quotation mark omitted)  "[W]hether [the defendant] breached its obligations … require[d] examining its conduct with respect to each trust" because there is "no way in which answering these questions for the trusts in which Plaintiffs invested [would] answer the same questions for the numerous trusts in which they did not invest." *Id.*; *see also Patterson*, 2019 WL 4934834, at *4-7 (no standing for claims where plaintiffs did not invest in certain funds).

So too here.  The plaintiffs purport to represent a class that consists not only of students and a myriad of associated third-party payors in a particular school or program, but everyone who paid NYU tuition, whether as an undergraduate, graduate, or doctorate candidate, in any discipline.

The admissions-related materials describing these varied programs, the course offerings, and course catalogs were different across NYU's various colleges, schools, and programs, and have changed over time. *See* Exs. 37–40. And, the manner and method of the delivery of classes within each – much less across all – varied, as did the student's subjective views of each course.

The plaintiffs base their contract claim on the representations that they allege NYU made individually to them. Even among the individual plaintiffs, they attended three different schools, each with their own brochures and course offerings. Obviously, they were not exposed to representations made across each of NYU's disciplines and thousands of course offerings, nor did any alleged contract encompass all of them. And, NYU provided different refunds for school or course-based fees or equipment. *See* Exs. 25, 26. Thus, "whether [NYU] breached its obligations … require[s] examining its conduct with respect to" the different admissions materials for each school, college, and program, and therefore the plaintiffs do not have standing to assert claims on those other students' behalf. *See Ret. Bd.*, 775 F.3d at 162.

### B.   The Plaintiffs Lack Standing to Seek Injunctive Relief.

The plaintiffs do not have standing to seek injunctive relief. The "'irreducible constitutional minimum' of standing" requires a plaintiff to plead a "'concrete and particularized injury." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-1548 (2016) (citation omitted). A plaintiff "lack[s] standing to pursue injunctive relief [if he or she is] unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)). "[P]ast injuries … do not confer standing … unless the plaintiff … is likely to be harmed again … in a similar way." *Id.*

Here, each plaintiff's purported injuries result from the now concluded Spring 2020 semester. Ms. Morales and Ms. Guidry graduated in Spring 2020, so they cannot possibly suffer future harm. *See Zagoria,* 1:20-cv-03610-GBD, ECF No. 13, at 6. While Ms. Chambers is still

13

enrolled at NYU, NYU has made plain that, going forward, "[s]ome or all instruction for all or part of Academic Year 2020-2021 may be delivered remotely. Tuition and mandatory fees have been set regardless of the method of instruction and will not be refunded in the event instruction occurs remotely …" Ex. 35. As a result, there is no possibility of future cognizable harm.

**IV.**   **The Plaintiffs' Breach of Contract and Breach of Implied Contract Claims Fail.**

The Court should refrain from second-guessing NYU's educational decisions, but, independently, the plaintiffs' breach of express and implied contract claims must be dismissed because: (1) notations in the course registration system regarding class locations or mode of instruction do not create an enforceable contract, particularly given NYU's express disclaimer; (2) they otherwise fail to allege a specific promise by NYU that it broke; (3) there are no allegations that NYU acted in bad faith; (4) Covid-19 and the related government edicts closing schools rendered NYU's performance impossible; and (5) damages are too speculative.

**A.**   **Notations in the Course Registration System Regarding Class Locations and Mode of Instruction Do Not Create an Enforceable Contract.**

The plaintiffs cannot premise their claims on course locations or mode of instruction in NYU's course registration system.  *See* AC ¶ 112.  As one Court explained,

> 'even if [a university does] not specifically reserve[] the right to make changes, courts have recognized that universities must have the flexibility to make changes in furtherance of their educational responsibilities. Certainly, … between a student's matriculation and graduation, an educational institution, which is a living, changing thing, may not reasonably be expected to remain static; and, conversely, change may reasonably be expected. Hence, each statement in a publication of what now is true does not necessarily become a term in the contract … '

*Cooper v. Peterson*, 626 N.Y.S.2d 432, 434 (N.Y. Sup. Ct. 1995) (quoting *Soderbloom v. Yale Univ.*, 1992 WL 24448, at *4 (Conn. Super. Ct. 1992)); *accord Cuesnongle v. Ramos*, 713 F.2d 881, 885 (1st Cir. 1983) (rejecting claim; university must have "discretion in dealing with

14

uncertain contingencies"); *Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir. 1976) (rejecting claim and recognizing "wide latitude and discretion" afforded educational institutions).

A court recently rejected the plaintiffs' argument in *Chong v. Northeastern University*, 2020 WL 5847626, at *3 (D. Mass. Oct. 1, 2020). There, the Court dismissed a breach of contract claim, holding that the plaintiffs "have not plausibly established that the parties' agreement included a right to in-person instruction." *Id.* In so doing, the Court rejected the argument (also made here) that "in-person instruction" "became part of the parties' contract when they registered for courses scheduled to 'be taught within an assigned room in specific buildings.'" *Id.*

Here, NYU reacted to the changed circumstances presented by a global health crisis and Governor Cuomo's executive orders by making modifications to the delivery of course instruction "in furtherance of [its] educational responsibilities." *See Cooper*, 626 N.Y.S. at 434. It is not reasonable to expect that every notation made about NYU's intended course offerings pre-pandemic necessarily became a contract term, much less a material term, on which students can now sue. Indeed, the course registration system includes a wide variety of information, including course descriptions, instructors, dates, and classrooms. *See* AC ¶ 111. Under the plaintiffs' theory, each such item would constitute an enforceable contract term, and a student could demand her money back if, for example, a class was held in a different classroom than originally intended, or an instructor changed, or went on parental leave, or a day of class was canceled due to a snowstorm. The law dictates otherwise. *See, e.g., Cooper*, 626 N.Y.S. at 434. Accordingly, the plaintiffs cannot state a breach of contract claim premised on notations in the course registration system.

This conclusion is reinforced by the fact that NYU expressly reserved the right to change, relocate, and/or modify any course offerings. Universities can effectively disclaim any specific promises made in bulletins, course catalogs, or other materials or publications. *See*, *e.g.*, *Gally*,

22 F. Supp. 2d at 206, fn. 7 ("[university] could disclaim the existence of a specific promise through the use of … a [bulletin] disclaimer"). Such disclaimers are enforceable and bar breach of contract claims pertaining to those alleged promises. *See Keles v. New York Univ.*, 1994 WL 119525, at \*6 (S.D.N.Y. Apr. 6, 1994) (disclaimer precluded claim); *Deen v. New School Univ.*, 2007 WL 1032295, at \*2 (S.D.N.Y. Mar. 27, 2007) (dismissing claim; bulletin "unambiguously state[d] that 'faculty' are 'subject to change without notice'"); *Prusack v. New York*, 117 A.D.2d 729, 730 (2d Dep't 1986).[4]  "[A] party cannot justifiably rely on a representation that is specifically disclaimed … "  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (2d Cir. 2002).

*Prusack* is instructive. There, the plaintiffs were students who accepted admission and enrolled in the State University of New York ("SUNY") on the understanding that tuition would be $6,000. 117 A.D.2d at 729. SUNY later increased tuition, and the plaintiffs sued for breach of contract to recover the increase. *Id.* The Court found that "no breach of contract occurred" when SUNY raised tuition because "[t]he rights and obligations of the parties, as contained in the university's bulletins, became a part of the parties' contract" and those documents included "specific disclaimers … that the tuition charges were subject to change." *Id* at 730.

So too here. The plaintiffs base their claims on locations in the course registration system; they allege that, as a result, they understood NYU to promise to provide "in-person" instruction. AC ¶¶ 13, 18, 27, 36, 111. Any such expectation, however, was unreasonable as a matter of law, particularly as to Ms. Morales and Ms. Guidry because CAS's and Tisch's "Bulletin" each acknowledged that NYU has the right to "change without notice *at any time at [its] sole*

---

[4]     *See also Mangla v. Brown Univ.*, 135 F.3d 80 (1st Cir. 1998) (affirming dismissal); *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 578 (6th Cir. 1988) (reversing denial of motion for directed verdict); *Villareal v. Chamberlain Coll. of Nursing and Health Sciences Inc.*, 2019 WL 4736488, at \*2–4 (S.D. Tex. Sept. 27, 2019) (dismissing claim).

*discretion*," among other things, the "course offerings, schedules, activities, … of the school and its departments and programs."  *See*, *e.g.*, Exs. 7, 8.   NYU expressly informed students, and students agreed, that changes could include "the elimination of … *classes,* or activities; *the relocation of or modification of the content of any of the foregoing*; and the cancellation of scheduled classes."  *Id.*  (emphasis added).  Thus, NYU did not promise in person instruction.

### B.   The Plaintiffs Have Not Identified a Specific Promise That Was Broken.

The implied contract between NYU and the plaintiffs was, at most, that NYU would provide them the ability to earn academic credits, and ultimately a degree, in exchange for tuition payments.  *See Gally*, 22 F. Supp. 2d at 206 ("When a student enrolls … an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks.").  The plaintiffs admit that NYU upheld its end of the bargain: it continued to provide them with educational services; it awarded them academic credits, and it conferred degrees on Morales and Guidry.  *See* AC ¶ 90 ("students are still getting full credit for … [their] course[s]"); *Zagoria,* 1:20-cv-03610-GBD, ECF No. 13, at 6.  As a result, NYU did not breach this contract.  *See Roe v. Loyola Univ. New Orleans*, 2007 WL 4219174, at *2-3 (E.D. La. Nov. 26, 2007) (rejecting contract claim by student who, after Hurricane Katrina, attended classes at another school, earned credits and graduated; there was no contract "that would entitle him to a free semester of law school.").

To the extent the plaintiffs attempt to state a claim based on an implied contract arising out of the various statements in admissions materials, that claim fails too.  Under New York law, "a plaintiff must identify: (1) a specific contract, (2) specified services offered or promises made, and (3) the university's failure to provide those services or keep those promises."  *Doe v. Columbia Univ.*, 2020 WL 1528545, at *5-6 (S.D.N.Y. Mar. 31, 2020) (dismissing breach of contract claim).  "The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student" and "the mere allegation of mistreatment without

17

the identification of a specific breached promise or obligation does not state a claim." *Gally*, 22 F. Supp. 2d at 207.  "[O]nly specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract … " *Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010) (affirming dismissal).  General statements of policy are insufficient.  *See Anthes v. New York Univ.*, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57, 60 (2d Cir. 2019) (affirming dismissal); *Cheves v. Tr. of Columbia Univ.,* 89 A.D.3d 463, 464 (1st Dep't 2011) (same); *Ward v. New York Univ.*, 2000 WL 1448641, at *3-5 (S.D.N.Y. Sept. 28, 2000) (dismissing claim); *Chong*, 2020 WL 5847626, at *2-3 (dismissing claim; plaintiffs "d[id] not plausibly establish … any right to in-person instruction").

In *Cheves*, for example, the plaintiff alleged that Columbia breached its contract by not permitting him on campus.  89 A.D.3d at 464.  The First Department affirmed dismissal of the contract claim, finding that "nothing in [the Alumni Relations brochure serving as the basis of the plaintiff's claims] guarantee[d] unfettered, irrevocable access for alumni to the campus or its facilities" and therefore "the complaint fails to rely on a specific promise material to plaintiff's relationship with Columbia … " *Id.*  So too here.

Other statements on which the plaintiffs premise their claim are inactionable puffery and generic descriptions of the NYU environment rather than specific, discrete promises to provide defined services.  *See, e.g.*, AC ¶ 54 ("Learning opportunities present themselves both in and out of the classroom, befitting an institution that is and always has been 'in and of the city.'"); ¶ 55 ("these clubs will enrich your experience"); ¶ 56 ("… you will be surrounded by scholars and peers who will enlighten and challenge you … your fellow students could be your colleagues for life."); ¶ 57 ("[u]niversity life at NYU is supplemented with a variety of resources and services").  As in

*Ward*, these statements do not constitute a specific promise by NYU to provide a particular service, and cannot serve as the basis for a breach of contract claim.  *See Ward*, 2000 WL1448641, at *4.

Moreover, the website statements the plaintiffs rely upon have changed over time.  For example, historical versions of the webpage containing the "NYU in New York City" statements (*see* AC ¶ 52) and "Campus Resources" statements (*id.* ¶ 57) did not appear until at least April 11, 2016 and August 2016, respectively, after Ms. Guidry applied to and was accepted by NYU.  *See* Exs. 37, 38.  Similarly, the "[w]hat makes NYU a unique place to learn" statement appeared on NYU's "Graduate Admissions" webpage (AC ¶ 56), which is irrelevant to Ms. Morales and Ms. Guidry because they were undergraduate students.  Further, the statement did not appear until after Ms. Guidry's acceptance.  *See* Exs. 39, 40.

As to fees, the AC is vague as to which fees the plaintiffs paid, which were refunded, and which allegedly should have been refunded but were not.  *See*, *e.g.*, AC ¶¶ 18, 27, 36.  The only specific fee mentioned by name is the Registration and Services Fees, which the plaintiffs allege are fees that "furnish resources to fund a portion of the budgets for a variety of services, operations, and activities that serve students and enhance university life in support of our academic program.  These services may include, but are not limited to, the Registrar, Student Health Center, the Wellness Exchange / Counseling Service, the Wasserman Center, Information Technology, and Student Life."  AC ¶ 72.  NYU continued to provide these and other services remotely, including: career services through the Wasserman Center, student health services, academic support, advising, IT, and more.  *See* Ex. 27.

Finally, the plaintiffs mention a string of online posts from purported NYU students, pulled from a Change.org online petition, to support their claims.  AC ¶¶ 89, 90, 104.  This effort fails.  First, the Court need not presume the facts alleged in the Change.org petitions to be true, as none

of these facts "can be accurately and readily determined" and do not derive "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).[5]  Second, the petitions are irrelevant because none of these purported "students" are named plaintiffs, and may not in fact even be NYU students at all, as anyone has the ability to access and sign a Change.org petition.

### C.  There Are No Allegations NYU Acted in Bad Faith.

Judicial intervention in cases against universities is limited to circumstances where the school is alleged to have acted in bad faith, arbitrarily, or irrationally.  *See, e.g.*, *Rodriguez v. New York Univ.*, 2007 WL 117775, at \*4 (S.D.N.Y. Jan. 16, 2007); *Olsson v. Bd. of Higher Educ. of City of N.Y.*, 49 N.Y.2d 408 (1980).  As the U.S. Supreme Court has stated, "When judges are asked to review the substance of a genuinely academic decision … they should show great respect for the faculty's professional judgment" and "may not override [an academic decision] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985).  To the extent an implied contract exists between students and a university, "[t]he essence of the implied contract is that an academic institution must act in good faith in its dealings with its students."  *Olsson*, 49 N.Y.2d at 414.  Thus, "[b]reach of contract claims brought by students against universities are 'subject to judicial review only to determine whether the defendants abided by their own rules and whether they have acted in good faith or their action was arbitrary or irrational.'"  *Rodriguez*, 2007 WL 117775, at \*4 (dismissing claims) (quoting *Babiker v. Ross Univ. School of Med.*, 2000 WL 666342, at \*6 (S.D.N.Y. May 19, 2000), *aff'd* 86 F. App'x 457 (2d Cir. 2004)).  Accordingly, courts dismiss breach of contract

---

[5]    If the Court takes judicial notice of the Change.org petitions the AC references (which it should not), there were at least three other Change.org petitions urging NYU to close its campus to ensure the safety of students and staff because of Covid-19.  *See* Exs. 41, 42, 43.

claims where plaintiffs have not alleged that the university acted in bad faith.  *See, e.g.*, *Ward*, 2000 WL 1448641, at *5 (dismissing claim; "there is nothing in the record … to suggest that defendants have either acted in bad faith, arbitrarily or irrationally"); *Olsson*, 49 N.Y.2d at 414 (dismissing claim where college "amply fulfilled its obligation to act in good faith").

Here, the plaintiffs do not plead that NYU acted in bad faith.  To the contrary, they acknowledge that NYU was forced to transition to remote learning "because of the global COVID-19 pandemic" and doing so was "justified."  AC ¶¶ 82, 87.  Accordingly, there is no colorable allegation that NYU acted in bad faith and breached any purported promise.

### D.    Covid-19 Rendered Performance Impossible.

Even if the plaintiffs could make out a claim that there was an enforceable promise to provide in-person classes (which they cannot), Covid-19 and resulting government orders rendered NYU's performance impossible.  Impossibility excuses performance where the "destruction of … the means of performance makes performance objectively impossible" as a result of "an unanticipated event that could not have been foreseen or guarded against in the contract."  *Kolodin v. Valenti*, 115 A.D.3d 197, 200 (1st Dep't 2014) (finding impossibility); *see also Organizacion JD LTDA v. U.S. Dep't of Justice*, 18 F.3d 91, 95 (2d Cir. 1994) (affirming dismissal); *L. N. Jackson & Co. v. Royal Norwegian Gov't*, 177 F.2d 694, 697 (2d Cir. 1949) (performance "prohibited by … order").

In *Organizacion JD LTDA*, for instance, the plaintiffs sued two banks after the government seized money transfers related to drug trafficking.  18 F.3d at 93.  The plaintiffs asserted several causes of action, including breach of contract.  *Id.* at 95.  The Second Circuit affirmed dismissal of the breach of contract claims on impossibility grounds, holding that "the private intermediary banks cannot be subject to a damage action because the intervening government actions in ordering the seizures of the [transfers] rendered any enforceable contract impossible to perform."  *Id.*

Here, similarly, Covid-19 and the resulting government orders precluded NYU's ability to provide in-person classes or to provide gathering places for students.  *See* AC ¶¶ 58–61.  Even if there was an enforceable contract to so do (which there was not), NYU's ability to provide students with access to these locations and facilities was rendered impossible by Covid-19 and associated government orders, which limited public gatherings and closed non-essential businesses. Accordingly, any alleged non-performance by NYU is excused by impossibility.

        **E.**        **The Plaintiffs Failed Adequately to Allege Damages.**

To state a claim, a plaintiff must plead "cognizable damages" as a result of the defendant's alleged breach.  *See Doyle v. MasterCard Int'l Inc.*, 2016 WL 9649874, at *2-3 (S.D.N.Y. Dec. 15, 2016) (dismissing claim); *see also House of Europe Funding I, Ltd. v. Wells Fargo Bank*, N.A., 2014 WL 1383703, at *10-11 (S.D.N.Y. Mar. 31, 2014) (same); *Int'l Bus. Machs. Corp. v. Dale*, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) (same).  Since the plaintiffs received educational credits in exchange for the tuition paid, they have suffered no damages.  *See* AC ¶ 82.

A claim that Covid-19 required some portion of the semester's instruction to be remote and therefore somehow devalued the plaintiffs' education is too speculative to be actionable.  To ascertain liability and damages, the Court would have to examine the method and effectiveness of each course of instruction by each professor prior to Covid-19 and then, after, assess the value of in-person instruction as compared to remote instruction as perceived by the particular plaintiff, on a course-by-course basis, and calculate the percentage of tuition (if any) that should be refunded on a course-by-course basis.  *See Mihalakis v. Cabrini Med. Ctr.* 151 A.D.2d 345, 346 (1st Dep't 1989) (the "difference between the value of the internship program provided by defendants and the value of an internship program having the characteristics that defendants represented to plaintiff" was too speculative to support a claim for fraud); *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 93 (S.D.N.Y. 2012) ("a general decline" in value "insufficient" to plead "damages").

22

Because the plaintiffs fail to allege any non-speculative way to do this analysis, they fail to allege any damages, and the claim must be dismissed.

## V.     **The Plaintiffs' Unjust Enrichment Claim Must Be Dismissed.**

### A.     **The Unjust Enrichment Claim Is Duplicative of the Breach of Contract Claim.**

A claim for unjust enrichment must be dismissed where it is "merely duplicative of [the] other causes of action." *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016); *see also Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. Jul. 20, 2016) (dismissing claim; unjust enrichment "is not a catchall cause of action" and "is not available where it simply duplicates, or replaces, a conventional contract … claim.") (citation and internal quotations omitted).   In *Bytemark, Inc. v. Xerox Corp.*, for instance, the Court dismissed as duplicative the plaintiff's unjust enrichment claim "based on the same factual allegations underlying its contract and tort claims."  342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018).

Moreover, courts have held that students may not assert unjust enrichment claims against universities where the relationship is governed by a contract. *See*, *e.g.*, *Yalincak v. New York Univ.*, 2009 WL 10714654, at *14 (D. Conn. Sept. 3, 2009) (applying New York law).  In *Yalincak*, the plaintiff, a former NYU student, asserted multiple claims, including for breach of contract and unjust enrichment. *See id.* at *9-10, *14.  The Court dismissed the unjust enrichment claim, finding that "[a]s plaintiff acknowledges, he and NYU had an implied contract … governed by the university's bulletins and regulations.  Because Plaintiff and NYU had a contract, he cannot bring an action for unjust enrichment." *Id.* (citation omitted); *see also Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440, 443 (1st Dep't 2015) (rejecting students' unjust enrichment claim as "indistinguishable from" and "duplicative of the contract claim[s]'"); *Chong*, 2020 WL 5847626, at *4 (dismissing unjust enrichment claim; "plaintiffs … paid tuition and fees … in accordance with the terms of" their contracts and therefore "may assert a claim for breach of contract").

The same result is compelled here.  Each plaintiff's unjust enrichment claim is duplicative:

| Unjust Enrichment Allegations | Breach of Contract Allegations |
| --- | --- |
| "The payment of this tuition and mandatory fees was to be in exchange for an in-person, on-campus educational experience to be provided to the students throughout the entire semester."  (AC ¶ 155) | "In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring Semester" (*Id.* ¶ 136) |
| "NYU has retained the full benefit of the tuition and a majority of the mandatory fee payments by Plaintiffs and members of the Class and Subclasses for the semester, yet has failed to provide the in-person and on-campus live education and access to NYU's services and facilities for which tuition and the mandatory fees were paid." (*Id.* ¶ 157). | "Defendant has retained monies paid by Plaintiffs and the Class and Subclasses for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain."(*Id.* ¶ 138). |
| "Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since NYU shut down on March 11, 2020." (*Id.* ¶ 159) | "Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since NYU shut down on March 11, 2020." (*Id.* ¶ 140) |

Accordingly, each unjust enrichment claim must be dismissed.[6]

**B.      NYU Was Not Unjustly Enriched.**

To state a claim for unjust enrichment, "a plaintiff must plead that (1) the defendant was

enriched (2) at the plaintiff's expense and (3) under the circumstances of such enrichment equity

and good conscience require the defendant to make restitution."   *Goldemberg v. Johnson &*

*Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014).   A mere allegation that a

defendant "received benefits … is insufficient … " *Samad v. Goldberg*, 2016 WL 6678923, at *9

(S.D.N.Y. Nov. 14. 2016) (quoting *Goel v. Ramachandran*, 111 A.D.3d 783, 791 (2d Dep't 2013)).

---

[6]      The fact that the unjust enrichment claim is plead in the alternative does not save it.  "Unjust enrichment may be plead in the alternative where the plaintiff challenges the validity of the contract; it may not be plead in the alternative alongside a claim that the defendant breached an enforceable contract."  *King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009) (dismissing claim); *see also Kamdem-Ouaffo v. Pepsico, Inc.*, 2015 WL 1011816 (S.D.N.Y. Mar. 9, 2015) (same); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (same).  Here, the plaintiffs do not challenge the validity of the contract.

Instead, a plaintiff must establish that "it is against equity and good conscience to permit the defendant to retain what is sought to be recovered," such as that there was "some mistake or deception practiced upon" the plaintiff by the defendant.  *Goel*, 111 A.D.3d at 791, 792 (citation and internal quotation marks omitted) (dismissing claim); *see also*, *e.g.*, *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 209 (S.D.N.Y. 2016) (dismissing claim).

Here, the plaintiffs voluntarily paid their tuition and fees to NYU in exchange for educational services and credits, and NYU provided them, and it conferred a degree on Ms. Morales and Ms. Guidry.  And, the AC admits that "NYU has to continue paying rent for their buildings and teachers who are still diligently teaching their students."  AC ¶ 89.  The plaintiffs have not alleged facts demonstrating that "equity and good conscience" mandate the return of the tuition paid given an unprecedented pandemic followed by state-wide shelter-in-place orders, which forced NYU to take the unprecedented action of transitioning to remote instruction.  To the contrary, if NYU "were required to reimburse plaintiff for … tuition payments [s]he made, *plaintiff would be unjustly enriched.*"  *See Roe*, 2007 WL 4219174, at *3 (rejecting claim) (emphasis added); *Yalincak,* 2009 WL 10714654, at *14 (student "received the educational benefit of his tuition payments when he took classes").

Where, as here, the plaintiffs "receive[d] the benefits of the services defendants provided," they do "not have an equitable claim to return of the sums paid."  *Metal Cladding, Inc. v. Brassey*, 159 A.D.2d 958 (4th Dep't 1990); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002) (rejecting claim).  And, NYU already refunded fees associated with certain services that would not be provided in light of Covid-19.  *See* Exs. 23, 25, 26.  Accordingly, the unjust enrichment claim fails.

## VI.   The Plaintiffs' Conversion Claim Must Be Dismissed.

### A.   The Conversion Claim Is Duplicative of The Breach of Contract Claim.

"[A]n action for conversion cannot lie where damages are merely sought for breach of contract." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000) (dismissing claim); *see also Jeffers*, 125 A.D.3d at 443 (dismissing claim; student "allege[d] no facts independent of the facts supporting their breach of contract claims"); *Armored Grp., LLC v. Homeland Sec. Strategies, Inc.,* 2009 WL 1110783, at *3 (S.D.N.Y. Apr. 21, 2009) (dismissing claim; "the so-called 'conversion' allegation is … asserted in substantially identical fashion as … the first claim for breach of contract").  Instead, "the plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights." *OTG Brands, LLC v. Walgreen Co.*, 2015 WL 1499559, at *9 (S.D.N.Y. Mar. 31, 2015) (citation and internal quotation omitted).

Here, the plaintiffs' conversion claim is premised on the same allegations as their breach of contract claim, not any unlawful or wrongful conduct by NYU.  They submitted tuition payments to NYU, and in return, received educational services, credits, and, in Ms. Morales and Ms. Guidry's case, an NYU degree.  *See Armored Group*, 2009 WL 1110783, at *3 (dismissing conversion claim).  In any event, NYU's conduct was not wrongful or unlawful as NYU could not have continued in-person classes given Governor Cuomo's orders to the contrary.

### B.   The Plaintiffs Fail to State a Claim for Conversion.

"To withstand a motion to dismiss … a plaintiff must allege: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question … " *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).  The plaintiffs' claim fails all three requirements.

First, "[i]t is well-settled New York law that an action for the conversion of monies is insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession." *In re Musicland Holding Corp.*, 386 B.R. 428, 440 (S.D.N.Y. 2008) (affirming dismissal; no allegations that the money was "part of a separate, identifiable, segregated fund") (citation and internal quotation marks omitted); *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) (dismissing claim; "plaintiffs do not claim ownership of a specifically identifiable, segregated $1 million") (quotation and internal quotation marks omitted).  "[I]f the allegedly converted money is incapable of being described or identified … it is not the proper subject of a conversion action." *Id.* (quotation omitted).

Here, the plaintiffs make the entirely conclusory allegation that NYU converted "specific and readily identifiable funds" (AC ¶ 170) but do not (and cannot) allege any facts demonstrating that their tuition payments were somehow segregated or otherwise specifically identifiable after payment, such as alleging that tuition payments are held separately in individual, segregated funds for each student.  Without such facts, tuition payments cannot be subject to a conversion claim.

Second, "[c]onversion is the exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession." *Citadel Mgmt.*, 123 F. Supp. 2d at 147.  Thus, "a plaintiff must allege" "ownership, possession or control over the property before its conversion."  *Kirschner*, 648 F. Supp. 2d at 540; *see also Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) ("legal title or an immediate superior right of possession"); *OTG Brands*, 2015 WL 1499559, at *9-10 (dismissing claim); *Weiss v. Rutgers Univ.*, 2014 WL 2608201, at *7 (D.N.J. June 10, 2014)

(dismissing claim; "Plaintiff paid tuition and fees in return for instruction. Thus, Plaintiff has not plausibly pled that she has superior rights to the money, or that it actually belongs to her.").

Here, the plaintiffs fail to allege facts demonstrating ownership or title over the tuition payments when NYU transitioned to remote instruction.  Under NYU's refund policy, students had a right to a refund if they withdrew from all their courses by February 24, 2020.  *Id.*  Because the plaintiffs did not do so, they no longer had any right to or ownership over their Spring 2020 semester tuition, and NYU did not exercise unauthorized control over their tuition payments.

**VII.**   **The Plaintiffs' Money Had and Received Claim Must Be Dismissed.**

**A.**   **The Plaintiffs' Relationship with NYU Is Governed by Agreement.**

As a threshold matter, where "the parties have an express agreement regarding the money, then a claim for money had and received cannot exist."  *Global Entm't, Inc. v. New York Tel. Co.*, 2000 WL 1672327, at *5 (S.D.N.Y. Nov. 6, 2000).  "The money had and received action … appl[ies] when there is an *absence of … agreement*[.]"  *Magi XXI, Inc. v. Stato Della Cita Del Vaticano*, 22 F. Supp. 3d 195, 207 (E.D.N.Y. 2014) (emphasis added).  Here, the plaintiffs had an agreement with NYU where they were to pay tuition in exchange for NYU's delivery of educational services by way of academic courses and credits, which bars their claim.

**B.**   **The Plaintiffs Fail to State a Claim for Money Had and Received.**

A claim for money had and received is "essentially identical to a claim for unjust enrichment."  *Belda v. Doerfler*, 2015 WL 5737320, at *4 n.4 (S.D.N.Y. Sept. 30, 2015) (collecting cases).  A plaintiff must allege that that: (1) the defendant received money belonging to the plaintiff; (2) the defendant benefitted; and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money.  *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984).  "Traditionally, the remedy for money had and received is available if one man has obtained money from another, through the

28

medium of *oppression, imposition, extortion, or deceit, or by the commission of a trespass.*"  *Panix Promos., Ltd. v. Lewis*, 2002 WL 122302, at *2 (S.D.N.Y. Jan. 22, 2002) (emphasis added) (citation and internal quotation marks omitted); *see also Global Entm't*, 2000 WL 1672327, at *5 (claim available where "one party possessed money that *in equity and good conscience* he ought not to retain") (emphasis added) (citation and internal quotation marks omitted); *see also Villareal*, 2019 WL 4736488, at *4 (dismissing claim asserted against university based on change in graduation requirements where university expressly retained the right to change such requirements).  In *Panix Promotions*, for example, the Court dismissed the plaintiff's claim for money had and received where the plaintiff claimed it was "owed money – that it *intentionally* paid [the defendant] – because [the defendant] failed to perform."  *Id.* at *2 (emphasis in original). The Court disagreed because "the money … was freely given to him with the expectation of performance, not repayment."  *Id.*

Here, as there, the plaintiffs intentionally paid money to NYU in exchange for NYU's performance.  They do not allege that their tuition payments were *not* voluntary.  Rather, they concede that they knowingly and voluntarily paid NYU money for tuition and fees (AC ¶¶ 16, 25, 34,70) in exchange for educational credits from a "top-ranked academic program[]" (*id.* ¶¶ 68), which they received.  Moreover, as set forth above, the plaintiffs have not alleged that "equity and good conscience" require a refund of their tuition.  *See Global Entm't*, 2000 WL 1672327, at *5.

Further, the plaintiffs only summarily allege that NYU "has been unjustly enriched."  *Id.* ¶ 176.  They admit that NYU is a "non-profit" organization (*id.* ¶ 43), which continued to provide students with remote instruction and academic credits in exchange for the tuition.  *Id.* ¶¶ 82, 86. They also admit that NYU continued paying rent and instructors' salaries.  *Id.* ¶ 89.

Accordingly, the plaintiffs' money had and received claim must be dismissed.

29

**CONCLUSION**

For the foregoing reasons, NYU's Motion to Dismiss should be granted, and the AC should be dismissed with prejudice.  The plaintiffs should not be permitted leave to amend further because they already amended in response to NYU's first motion to dismiss, failed to correct the numerous deficiencies in their claims, and any amendment would be futile.  *See Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292 (S.D.N.Y. 2018) (Daniels, J.) (denying leave to amend).

Dated: October 6, 2020                          Respectfully submitted,

                                                         **DLA PIPER LLP (US)**

                                                *__/s/  Keara M. Gordon_____*
                                                Brian S. Kaplan
                                                Keara M. Gordon
                                                Colleen Carey Gulliver
                                                Rachael C. Kessler
                                                1251 Avenue of the Americas
                                                New York, New York 10020-1104
                                                Phone: (212) 335-4500
                                                Facsimile: (212) 335-4501
                                                brian.kaplan@us.dlapiper.com
                                                keara.gordon@us.dlapiper.com
                                                colleen.gulliver@us.dlapiper.com
                                                rachael.kessler@us.dlapiper.com

                                                *Attorneys for Defendant New York University*

## **CERTIFICATE OF SERVICE**

I hereby certify that I am one of the attorneys for the defendant in this action and that on October 6, 2020, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

/s/ *Keara M. Gordon*
Keara M. Gordon